1999 SD 133

**William F. SORRELS, D.O.,**
**Plaintiff and Appellant,**

v.

**QUEEN OF PEACE HOSPITAL,**
**A South Dakota Corporation,**
**Defendant and Appellee.**

**No. 20801.**

Supreme Court of South Dakota.

Considered on Briefs June 2, 1999.

Decided Oct. 6, 1999.

Scott N. Heidepriem of Johnson, Heidepriem, Miner, Marlow & Janklow, Sioux Falls, for plaintiff and appellant.

Roger A. Sudbeck of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for defendant and appellee.

GORS, Circuit Judge.

[¶ 1.] Dr. William F. Sorrels appeals from summary judgment in favor of Queen of Peace Hospital. We affirm.

## FACTS

[¶ 2.] William F. Sorrels is a doctor of osteopathy who enjoyed staff privileges at the Queen of Peace Hospital in Mitchell, South Dakota. On December 6, 1993, he admitted three separate incidents of unlawful use of cocaine, some of which he had stolen from the hospital. Dr. Sorrels then resigned his staff privileges at Queen of Peace. Dr. Sorrels successfully completed drug treatment in January 1994. In March 1994, the South Dakota Board of Medical and Osteopathic Examiners suspended his license but stayed the suspension and placed him on probation for two years with several conditions. In January 1995, Dr. Sorrels was indicted on three federal felony drug charges. Pursuant to a plea agreement, he surrendered his Drug Enforcement Administration (DEA) Certificate of Registration and pled guilty to a misdemeanor. He also agreed that he would "no longer [be] authorized to prescribe, administer, dispense, order, possess, or in any manner handle controlled substances."

[¶ 3.] In April 1995, the hospital reinstated Dr. Sorrels' staff privileges with conditions and he waived his right to due process. On July 5, 1995, Dr. Sorrels requested an alteration of the waiver of due process. On August 28, 1995, the hospital held a hearing and agreed to change the due process provision to provide that Dr. Sorrels only waived his right to due process for acts that violated the conditions on his staff privileges. A new set of conditions was prepared on September 26, 1995. The first condition provided: "Dr. Sorrels must voluntarily relinquish all Medical Staff privileges granted to him that requires [sic] a valid DEA registration permit and number." The eighth condition provided: "Dr. Sorrels' refusal to comply with any of the above stated conditions shall result in automatic termination of this [sic] Medical Staff privileges." On October 28, 1995, Dr. Sorrels signed a new waiver of his right to due process.

[¶ 4.] On December 1, 1995, the hospital's chief of staff wrote to Dr. Sorrels to ask what arrangements he had made to have a physician with a valid DEA license available when a prescription for a controlled substance was necessary. On December 5, 1995, Dr. Sorrels replied that his associate and other doctors with whom he had made arrangements would co-sign his orders for controlled substances. On December 11, 1995, valium, which is a controlled substance, was dispensed to a patient of Dr. Sorrels who came into the emergency room at Queen of Peace. On December 14, 1995, the hospital informed Dr. Sorrels that his proposal to have prescriptions co-signed was not acceptable and that the doctors with whom he made arrangements would be required to provide the original prescriptions. On the same day, the hospital informed Dr. Sorrels that prescribing valium to his patient in the emergency room on December 11, 1995, was contrary to the conditions imposed on his staff privileges and that all disciplinary options were open. On December 19, 1995, the hospital executive committee met to discuss the valium incident and concluded that Dr. Sorrels had violated the conditions of his restricted staff privileges and recommended termination. On December 20, 1995, the board of trustees met with the executive committee and agreed Dr. Sorrels had violated the conditions and terminated his staff privileges. The hospital did not hold a due process hearing.

[¶ 5.] Initially, on May 16, 1996, Dr. Sorrels sued Queen of Peace for damages. Then, in October 1996, he applied for a writ of mandamus which was granted by the trial court compelling Queen of Peace to give Dr. Sorrels a due process hearing and reinstating him until a hearing could be held. This Court stayed the writ of mandamus and granted an intermediate appeal. Thereafter this Court reversed the trial court because Dr. Sorrels had waived his right to due process and directed the trial court to dismiss the writ of mandamus. *Sorrels v. Queen of Peace*

*Hosp.*, 1998 SD 12, 575 N.W.2d 240. The hospital then moved for summary judgment which the trial court granted. Dr. Sorrels appeals.

## STANDARD OF REVIEW

In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper. (citations omitted).

*Walz v. Firemans's Fund Ins. Co.*, 1996 SD 135 at ¶ 6, 556 N.W.2d 68, 70 (citing *Lamp v. First Nat'l Bank of Garretson*, 496 N.W.2d 581, 583 (S.D.1993)).

## DECISION

■ [¶ 6.] After Dr. Sorrels resigned his staff privileges in 1993, he and the Queen of Peace Hospital voluntarily entered into a new contract in 1995: the hospital agreed to extend staff privileges to Dr. Sorrels and he agreed to certain conditions. One of the conditions was "dispense no drugs" and another was "no due process." When Dr. Sorrels dispensed valium he was terminated without a hearing. Although this Court previously held that Dr. Sorrels had effectively waived due process, *Sorrels*, 1998 SD 12 at ¶ 13, 575 N.W.2d at 244, Dr. Sorrels' waiver of due process did not waive his other contractual rights. Dr. Sorrels could still sue for damages. The hospital conceded no less during the mandamus appeal. If there was a genuine issue of material fact, then Dr. Sorrels was entitled to a trial on his damage claim.

■ [¶ 7.] In the mandamus appeal, Dr. Sorrels claimed he could order the valium and have another doctor co-sign the order later. However, this Court noted that "Sorrels never conferred with [the other doctor in the emergency room], nor did he request any other physician with a DEA certificate to order or co-sign for the drug." *Sorrels*, 1998 SD 12 at ¶ 4, 575 N.W.2d at 242. Now in this appeal, Dr. Sorrels claims for the first time that he only "recommended" valium and conjectures that perhaps the nurse on duty dispensed the drug illegally without an order from him or anyone. Opposite this speculation, however, is the direct evidence from the emergency room nurse that she called Dr. Sorrels on the telephone and he ordered the valium, and the affidavits from the physicians responsible for the emergency room that they did not prescribe valium for Dr. Sorrels' patient. Dr. Sorrels' innuendo cannot generate a genuine issue of material fact in the face of the nurse's testimony in her affidavit that Dr. Sorrels ordered the drug.

[¶ 8.] This is a situation of Dr. Sorrels' making. Under the agreement with the hospital in which he regained his limited staff privileges, Dr. Sorrels relinquished all medical staff privileges that required a valid DEA registration permit and number and under the plea agreement, he agreed not to "prescribe, administer, dispense, order, possess, or in any manner handle controlled substances." He could not do anything related to controlled substances. He was obligated to avoid these situations and he did not.

[¶ 9.] Dr. Sorrels complains that the hospital's procedure was not clear. However, it is abundantly clear that Dr. Sorrels could not have anything to do with controlled substances. That much is unambiguous. Any ambiguity was created by Dr. Sorrels when he either prescribed or "recommended" valium. Now he seeks to

profit from the alleged ambiguity by claiming it excuses his want of attention to the restrictions. The procedure is only ambiguous because he had unilaterally decided he could have other physicians co-sign his orders. The hospital neither proposed nor agreed to co-signing and in fact rejected it upon inquiry [albeit on the same day that it notified him that he had violated the conditions of his restricted staff privileges]. The hospital could not agree to the procedure because Dr. Sorrels could not co-dispense. *Sorrels,* 1998 SD 12 at ¶ 10, 575 N.W.2d at 244. Dr. Sorrels' claim that the hospital's "dispense no drugs" restriction was ambiguous is faulty logic. Dr. Sorrels cannot simply propose that there is an ambiguity and thereby create one. If the valium was only recommended and not ordered, then it was Dr. Sorrels' duty to make sure there was no ambiguity and to get another physician to give the proper order.

[¶ 10.] In summary, it does not matter whether Dr. Sorrels' version is right or not. Either he ordered the valium or he recommended it. He had no authority to do either and either was a violation of the conditions of his restricted staff privileges at the hospital. Dr. Sorrels proposes no other doctor who prescribed the drug, no other doctor who co-signed for the drug and no other doctor who "recommended" the drug.

[¶ 11.] At best the controversy over "recommended" versus "ordered" is splitting a hair which no nurse should have to split in the emergency room. If Dr. Sorrels was only recommending the valium, he should have told the nurse that this was only a recommendation and not an order and that the nurse would have to consult another doctor to prescribe the drug. He did not.

[¶ 12.] There was no genuine issue of material fact and the hospital was entitled to summary judgment. We affirm.

[¶ 13.] MILLER, Chief Justice, and GILBERTSON, Justice, concur.

[¶ 14.] AMUNDSON and KONENKAMP, Justices, concur in result.

[¶ 15.] GORS, Circuit Judge, for SABERS, Justice, disqualified.

KONENKAMP, Justice (concurring in result).

[¶ 16.] If Doctor Sorrels was prohibited from ordering, dispensing, or prescribing controlled substances, then merely recommending that they be administered to his patient would not violate the terms of his agreement with the hospital. For this reason, I disagree with the majority's assertion that ordering or recommending the controlled drug makes no difference. On its face, his claimed statement to the nurse in the form of a recommendation, not an order, would be sufficient to create a material issue of fact on whether he violated his agreement. But is it a *genuine* issue? That is the foremost question. SDCL 15–6–56(c) (summary judgment proper if no "genuine issue as to any material fact").

[¶ 17.] At one time, Doctor Sorrels claimed the authority to order drugs so long as another physician later co-signed his order. Now he says that he never ordered the drug, but only recommended it. Would the nurse have been within her bounds to reply, "I think not, Doctor"? Not likely! And she denies having received anything but an unequivocal order. In fact, in his earlier appeal, Sorrels did not dispute the nurse's version of events. A nurse has no privilege to overrule a doctor's orders, especially a doctor with hospital privileges, conditional or otherwise.

[¶ 18.] In hearing summary judgment motions, trial courts are empowered to do more than merely identify claimed material issues of fact. They may also engage in some qualitative analysis.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a ration-

al trier of fact to find for the non-moving party, there is no "genuine issue for trial."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986) (footnote omitted) (quoting *First Nat'l. Bank v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569, 592 (1968)). "[I]f the factual context renders [nonmovants'] claim[s] implausible . . . [they] must come forward with more persuasive evidence to support their claim[s] than would otherwise be necessary." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356, 89 L.Ed.2d at 552.

[¶ 19.] Faced with implausible assertions advanced to defeat summary judgment, trial judges ought not be forced to sift feathers. Doctor Sorrels' claim is so insubstantial, so illogical, and so contrary to standard medical practice, that he had the duty to come forward with some persuasive proof to support his assertion that he only recommended the prescription. Other than his bare claim that he gave the name of the drug as a recommendation, Sorrels can muster no other evidence to sustain his position. No jury could reasonably find that he had not dispensed a controlled substance in violation of his agreement. *See generally* 1 S. Childress & M. Davis, Federal Standards of Review § 5.04 (2d ed. 1992)(discussing the standards developed by the United States Supreme Court for summary judgment).

[¶ 20.] AMUNDSON, Justice, joins this special writing.