2002 SD 30

**Curtis R. FISHER and Debbie G. Fisher, Plaintiffs,**

v.

**Rick KAHLER, d/b/a Kahler Realtors, Defendant and Appellee,**

**and**

**Arlen and Eunice Rude, Defendants and Appellants.**

**No. 21807.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 1, 2001.

Decided Feb. 27, 2002.

Rehearing Denied April 16, 2002.

Gene R. Bushnell of Costello, Porter, Hill, Heisterkamp, Bushnell & Carpenter, Rapid City, Attorneys for appellees.

Paul J. Gillette of Gillette, Battey & Gillette, Redfield, Attorney for appellants.

KONENKAMP, Justice.

[¶ 1.] This appeal centers on a claim of negligent misrepresentation brought by commercial property buyers against the sellers' realtor. The trial court granted summary judgment for the realtor, concluding that the realtor had no legal duty to the buyers. We reverse and remand because South Dakota's realtor licensing laws create additional duties for licensees beyond those imposed by the common law.

## Background

[¶ 2.] As this case comes before us on summary judgment, we relate the facts in a light most favorable to the nonmoving parties. *Satellite Cable Srvs., Inc. v. Northern Electric Coop., Inc.*, 1998 SD 67, ¶ 5, 581 N.W.2d 478, 480. Curtis and Deb Fisher owned two adjoining commercial lots in Rapid City, South Dakota. These properties, Lot O and Lot U, were leased to Federal Express. Lot U was the primary site for the Federal Express facilities, but a portion of its paved parking area extended onto Lot O. In 1993, Rick Kahler, d/b/a Kahler Realtors, contacted Curtis Fisher and requested an opportunity to sell the bare portion of Lot O. The Fishers told Kahler that they did not want to sell the paved parking lot portion. They signed an exclusive listing agreement with Kahler, giving him the right to list for sale Lot O for one year.

[¶ 3.] Arlen and Eunice Rude, the owners of Rude Transportation, were looking to buy commercial land in Rapid City for a future truck terminal. Kahler, as agent for the Fishers, represented to the Rudes that Lot O was 1.3 acres, 177 feet by 318 feet. Kahler showed them documents on the lot, including a plat, but none of these depicted a parking lot on Lot O. In conversation with the Rudes, Kahler told them that Lot O consisted entirely of vacant ground. Kahler made no independent determination of the actual dimensions of the portion of Lot O that the Fishers wanted to sell. After making a brief visual inspection, the Rudes offered to buy the lot. At that time, the Fishers reminded Kahler that they did not wish to do anything that would interfere with their lease to Federal Express. In November 1994, the Fishers and the Rudes executed a purchase agreement, one provision of which was that no survey would be required. After the sale, the Rudes ordered a survey of Lot O, which revealed its usable size to be 107 feet by 318.02 feet—not sufficient, in their view, for their planned freight terminal.

[¶ 4.] Not intending to sell the parking area on Lot O, which they leased to Federal Express, the Fishers sued Kahler for mishandling the sale. The Rudes were included in the suit because the Fishers wanted a court order to reform the deed, so that the paved portion of the lot could be returned to them. The Rudes crossclaimed against Kahler for negligent misrepresentation. After various legal maneuvers unnecessary to recount here, the parties moved for summary judgment. In granting Kahler's motion, the circuit court concluded that Kahler owed no legal duty to the Rudes. The Rudes now appeal that decision. The Fishers are not involved in this appeal.

## Analysis and Decision

[¶ 5.] Summary judgment is appropriate under SDCL 15-6-56 when the entire record reveals that there is no genuine issue on any material fact and that the moving party is entitled to a judgment as a

matter of law. *See Meyer v. Santema,* 1997 SD 21, ¶ 8, 559 N.W.2d 251, 254 (citations omitted). If there are genuine issues of material fact, then summary judgment is improper. *Farmers Feed & Seed, Inc. v. Magnum Enterprises, Inc.,* 344 N.W.2d 699, 701 (S.D.1984). Disputed facts become material if they affect the outcome of a case under the law, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986). On review, we apply the same test as the trial court: we probe the record for material facts, resolve disputed facts in favor of the nonmoving party, and decide whether the moving party is entitled to a judgment as a matter of law. *Sorrels v. Queen of Peace Hosp.,* 1999 SD 133, ¶ 5, 601 N.W.2d 606, 608.

[¶ 6.] Liability in tort depends on the existence and breach of duty, and unless a statute creates a legal obligation, ascertaining a duty and defining its limitations remain a function of the courts. *Tipton v. Town of Tabor,* 1997 SD 96, ¶ 12, 567 N.W.2d 351, 357 (Tipton II). A duty will not spring up at the mere behest of those with grievances real or imagined. A duty arises either by legislation or by the common law, through the ever-changing movement of social, political, and economic forces. Here, Kahler was an agent of the Fishers, not of the Rudes. It has been well accepted, not only in South Dakota but throughout the United States, that a seller's agent has no duty to ensure that a buyer's interests are well served.[1] *But see Cechovic v. Hardin & Associates, Inc.,* 273 Mont. 104, 902 P.2d 520, 525, 526 (1995) (liability of realtors affirmed in failing to exercise reasonable care in determining and communicating to buyers actual boundaries of property).

[¶ 7.] In *Lunstra v. Century 21 GKR-Lammers Realtors,* this Court had occasion to examine a similar case. 442 N.W.2d 448 (S.D.1989). There, a home-buyer sued the realtors and sellers for misrepresenting the size and boundaries of a residential lot. The trial court granted summary judgment against the buyer. Affirming, this Court held that the buyer's claim was barred because any prior reference to the size of the lot merged into the warranty deed that was delivered to and accepted by the buyer. In dissenting, Justice Sabers argued that the majority effectively excused realtors from performing the basic professional duty of making a reasonably complete investigation of a property before making representations about it to buyers. Additionally, the dissent cited the South Dakota Real Estate Commission's regulations for licensed realtors.

[¶ 8.] In 1992, three years after *Lunstra,* the South Dakota Legislature enacted into law standards of conduct for realtors, many of which had been Real Estate Commission regulations. Two of these enactments have particular relevance here,

---

1. "In negotiating a real estate sale, any relationship between the seller's agent and the potential buyer is a commercially antagonistic one, with each side working for his best advantage and not for the benefit of the other." *Andrie v. Chrystal-Anderson & Assoc. Realtors, Inc.,* 187 Mich.App. 333, 466 N.W.2d 393, 395 (1991). "[A] listing agent representing a seller [of real estate] does not owe the buyers a duty to disclose defects...." *Blackmon v. First Real Estate Corp.,* 529 So.2d 955, 959 (Ala.1988). "[A] broker has no legal duty [to a buyer] to inspect listed property and disclose all facts which might materially affect its value or desirability." *Hagans v. Woodruff,* 830 S.W.2d 732, 736 (Tex.App.1992). And in *McAdams v. Dorothy Edwards Realtors, Inc.,* the Indiana Supreme Court claimed to be "unaware of any authority for the proposition that a seller's agent owes a buyer a duty to act in the buyer's best interest." 604 N.E.2d 607, 611 (1992).

since they modify common law duties of realtors. SDCL 36–21A–71 provides in pertinent part:

Unprofessional conduct includes the following: (4) making any false promise or advertisement of a character such as to influence, persuade, or induce a party to a transaction to the party's injury or damage; [and] (32) committing any act constituting or demonstrating bad faith, incompetence, or fraudulent dealings.

SDCL 36–21A–78 provides, again in pertinent part: "On taking a listing, a licensee shall substantiate that the information taken in the listing agreement is accurate." Thus, unprofessional conduct on the part of a realtor is not confined to actions respecting only client sellers of real estate. The Legislature's intention as expressed in these two statutes was to broaden the scope of a realtor's duties. SDCL 36–21A–71(4) specifies no particular party, and by "a party" we understand the Legislature to mean "any party." SDCL 36–21A–78 broadens the scope of duties even beyond the parties to any given transaction; it addresses the profession itself.

▆▆▆ [¶ 9.] Just as lawyers have duties to the legal profession antecedent to duties to particular clients, so now, by statute, South Dakota realtors have a duty to their profession and to the public, namely, to substantiate information in listing agreements. Consequently, realtors can be held liable for negligent misrepresentation in failing to substantiate their listings. "Negligence is the breach of a legal duty imposed by statute or common law." *Stevens v. Wood Sawmill, Inc.*, 426 N.W.2d 13, 14 (S.D.1988) (citation omitted). Indeed, these statutes go far toward making the occupation of realtor a professional one.

▆▆▆ [¶ 10.] Since our original formulation in Boos v. Claude, we have not deviated in our understanding of negligent misrepresentation:

"there must be knowledge, or its equivalent, that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that, if false or erroneous, he will because of it be injured in person or property. Finally, the relationship of the parties, *arising out of contract or otherwise*, must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care."

69 S.D. 254, 260, 9 N.W.2d 262, 265 (1943) (citation omitted) (emphasis added).[2] The Restatement (Second) of Torts § 552 (1977) is in essential agreement with South Dakota law:

One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

From these sources, we isolate the elements of this tort as follows: negligent misrepresentation occurs whenever one party makes (1) a misrepresentation, (2) without reasonable grounds for believing the statement to be true, (3) with the intent to induce a particular action by another party, and the other party (4) changes position with actual and justifiable

---

**2.** *See Meyer,* 1997 SD 21, 559 N.W.2d 251; *Aesoph v. Kusser,* 498 N.W.2d 654 (S.D.1993); *Peterson v. Rogers,* 347 N.W.2d 580 (S.D. 1984); *Littau v. Midwest Commodities, Inc.,* 316 N.W.2d 639 (S.D.1982).

reliance on the statement, and (5) suffers damage as a result.

[¶ 11.] According to the Rudes, Kahler told them that Lot O was entirely "vacant" land, and he represented that the dimensions of the lot for sale as 177 feet by 318 feet.[3] By Kahler's own admission, he did not verify that his representations were correct.[4] At least four distinct questions of fact exist: (1) Did Kahler misrepresent the character and dimensions of the actual property to be sold, "such as to influence, persuade, or induce" the Rudes into a transaction to their damage, in contravention of SDCL 36–21A–71(4)? (2) Did Kahler's dimensional description of the actual portion of Lot O intended for sale fall below the standards for realtor competence, contravening SDCL 36–21A–71(32)? (3) Did Kahler violate the general duty of substantiation prescribed in SDCL 36–21A–78? (4) Did the brief visual inspection of the lot the Rudes conducted constitute a determination, independent of Kahler's representations, that it would be suitable for their purposes, or did they actually and justifiably rely on his representations? These are disputed questions of material fact. Because they are unresolved, the summary judgment cannot stand.

[¶ 12.] We reverse and remand for trial.

[¶ 13.] GILBERTSON, Chief Justice, and SABERS and AMUNDSON, Justices, and GORS, Acting Justice, concur.

---

3. It is also for the fact finder to determine whether the dimensions of the *property which the Fishers were willing to sell* were accurately listed and whether Kahler negligently misrepresented them.

4. Since the Rudes are suing under a theory of negligent misrepresentation, SDCL 36–21A–71(3) is irrelevant, because it proscribes misrepresentation that is not only false but also willful. If an act is willful, it cannot also be negligent.