2003 SD 94

**Craig SAIZ and Patty Saiz, Plaintiffs and Appellants,**

v.

**Rod HORN, d/b/a Horn Real Estate, Defendant and Appellee.**

**No. 22570.**

Supreme Court of South Dakota.

Considered on Briefs May 27, 2003.

Decided Aug. 6, 2003.

Matthew J. Kinney of Kinney & Koch, Spearfish, for plaintiffs and appellants.

Thomas E. Brady of Brady Plumier, Spearfish, for defendant and appellee.

KONENKAMP, Justice.

[¶ 1.] This is an action brought by homebuyers against their realtor. After their purchase, the buyers found that the home

they bought had substantial defects. They also learned that the seller had previously given other potential buyers a disclosure statement revealing these defects. The buyers sued their realtor for breach of agency and breach of fiduciary duty in failing to inform them that the seller had a statutory duty to provide them with a disclosure statement. The trial court granted summary judgment for the realtor, finding no duty on the part of the buyers' agent. The court also ruled that the claim was barred by the six-year statute of limitations. Because realtors representing buyers have a duty of ordinary care toward their clients, which includes the duty to disclose statutorily mandated procedures for home sales, we conclude that the realtor here had an obligation to inform his clients of the seller's responsibility to provide a disclosure statement. We also hold that the six-year statute of limitations had not expired. Summary judgment for the realtor is reversed, and the case is remanded for trial.

### Background

[¶ 2.] In 1995, plaintiffs Craig and Patricia Saiz were looking to rent a home in Belle Fourche, South Dakota. Patricia contacted Rod Horn, a real estate broker. Horn suggested that they purchase a home located at 505 Kingsbury Street. Advising them that the price was very low, Horn stated that he would consider buying it himself as an investment property if they chose not to purchase it.

[¶ 3.] Plaintiffs had no previous experience in buying a house. They agreed that Horn would represent them as their

agent.[1] The home was owned by Marjorie Dailey, who was represented by Lookout Mountain Realty of Spearfish. Unknown to plaintiffs, Dailey had previously completed a seller's property condition disclosure statement on February 13, 1995. The statement had been given to earlier potential buyers. The disclosure statement revealed a history of water penetration problems and cracking.[2] Horn never advised plaintiffs of the seller's statutory duty to provide a disclosure statement.

[¶ 4.] On June 12, 1995, plaintiffs executed an offer and agreement to purchase the home for $39,500. Horn was listed as the selling salesperson for the purpose of a commission split with the seller's broker. Horn continued to represent plaintiffs until the sale closed on August 25, 1995. Plaintiffs were never offered and did not receive a seller's property condition disclosure statement before making their written offer. However, plaintiffs' lender obtained a home inspection report, which stated that the dwelling was structurally sound and in a state of good repair, with only trim and stain around windows, cellar door repair, and foundation fill necessary.[3]

[¶ 5.] For a period after closing, the condition of the residence was unremarkable. In 1999, plaintiffs installed seven new windows and replaced two front doors. In 2000, they began to notice cracks in most rooms that successive repainting would not thwart. They also discovered that the walls and insulation contained significant moisture from water penetration occurring over a number of years. They spent thou-

---

1. If there was a signed representation agreement, it was not entered in the record.

2. The disclosure statement showed an "X" in the "Yes" box by the question, "Have you experienced any water penetration problems in the walls, windows, doors, basement, or crawl space?" An "X" was also placed in the

"Yes" box by the question, "Are there any interior cracked walls or floors, or cracks or defects in exterior driveways, sidewalks, patios or other hard surface areas?"

3. These repairs are mentioned in the offer and agreement to purchase.

sands of dollars improving the home. Eventually, after consulting with a contractor in 2001, plaintiffs discovered that the house did not have a concrete foundation to stabilize the walls. In actuality, the foundation area was comprised of either cinder blocks or wood posts set into the soil.

[¶ 6.] On one side of the house, a large expanding sink hole caused a part of the house to pull to the west, gradually tearing the west side away from the rest of the structure. The lack of a concrete foundation and water intrusion caused various problems within the house, including shifting of walls, drywall cracks, peeling of paint, warping of the stairway railing and stairs, and gaps at wall joints. To avoid ground contraction or further erosion of ground support, contractors recommended a concrete foundation structure on part of the house, costing $15,000 to $20,000. Plaintiffs claim that had they been presented with a disclosure statement, they would have renegotiated the terms and conditions of sale or may have decided not to purchase the property.

[¶ 7.] On August 6, 2001, plaintiffs brought suit. The complaint alleged breach of agency contract and breach of fiduciary duty. The trial court granted summary judgment for Horn, concluding that SDCL 43–4–38 placed the duty to provide a disclosure statement on the seller and that the statute does not impose such a duty on the buyer's agent. The court also ruled that plaintiffs' claim is barred by the six-year statute of limitations in SDCL 15–2–13(1). The court reasoned that because the disclosure statement must be provided "before the buyer makes a written offer," the fact that the agent continued to represent plaintiffs beyond that time was of no consequence. To the court, the cutoff date was June 12, 1995, when the purchase agreement was offered and accepted the next day. Plaintiffs appeal on the following issues: (1) "Whether the trial court erred by granting Horn's motion for judgment on the pleadings and summary judgment by finding no breach of agency duty owed by Horn to Saiz." (2) "Whether the trial court erred by granting Horn's motion for judgment on the pleadings and summary judgment by finding the statute of limitations barred Saiz' claim."

## Standard of Review

[¶ 8.] Summary judgment is appropriate under SDCL 15–6–56, when the entire record reveals that there is no genuine issue on any material fact and that the moving party is entitled to a judgment as a matter of law. *Fisher v. Kahler*, 2002 SD 30, ¶ 5, 641 N.W.2d 122, 124–25 (citations omitted). If there are genuine issues of material fact, then summary judgment is improper. *Id.* at ¶ 5, 641 N.W.2d at 125 (citation omitted). Disputed facts become material if they affect the outcome of a case under the law, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986)). On review, we apply the same test as the trial court: we probe the record for material facts, resolve disputed facts in favor of the nonmoving party, and decide whether the moving party is entitled to a judgment as a matter of law. *Id.* (citing *Sorrels v. Queen of Peace Hosp.,* 1999 SD 133, ¶ 5, 601 N.W.2d 606, 608.)

[¶ 9.] Liability in tort depends on the existence of a duty and a breach of that duty, and unless a statute creates a legal obligation, ascertaining a duty and defining its limitations remain a function of the courts. *Id.* (citing *Tipton v. Town of Tabor,* 1997 SD 96, ¶ 12, 567 N.W.2d 351, 357 (*Tipton* II)). A duty will not arise at

the mere behest of those with grievances real or imagined. *Id.* at ¶ 6, 641 N.W.2d at 125. A duty originates either by legislation or through the common law. *Id.*

## Analysis and Decision

### 1. Agency and Fiduciary Duties

[¶ 10.] This is an action against the buyers' agent for breach of agency and fiduciary duties in failing to inform the buyers that a home seller must provide a disclosure statement. The trial court granted summary judgment for Horn, concluding that SDCL 43–4–38 imposes the duty only on the seller to provide a disclosure statement. SDCL 43–4–38 provides:

> The seller of residential real property shall furnish to a buyer a completed copy of the disclosure statement before the buyer makes a written offer. If after delivering the disclosure statement to the buyer or the buyer's agent and prior to the date of closing for the property or the date of possession of the property, whichever comes first, the seller becomes aware of any change of material fact which would affect the disclosure statement, the seller shall furnish a written amendment disclosing the change of material fact.

[¶ 11.] This statute, of course, imposes no duty on the buyers' agent. Horn had no duty to uncover and disclose defects in the seller's property. At issue in this case, however, is whether Horn, as the buyers' agent, owed a duty to the buyers to inform them that, by law, the seller must give them a disclosure statement. We have previously recognized a fiduciary duty between a real estate agent and a principal. *Hurney v. Lock,* 308 N.W.2d 764, 768 (S.D.1981). Here, Horn acted as the buyers' agent, and thus he owed a fiduciary duty to them.[4]

[¶ 12.] Not unlike the requirement of other professionals to inform their clients, real estate agents are expected to advise their principals on the rules and procedures involved in a real estate transaction. Why have realty agents for buyers, if agents, supposedly knowledgeable in real estate transactions, have no obligation to tell clients that sellers are required by law to give a disclosure statement? Such disclosure is legally mandated for the protection of buyers. It can reveal matters that may materially influence a decision whether to purchase a home.

[¶ 13.] The applicable principles in any agency contract of this kind are well established. *Witt v. John Blomquist, Inc.,* 249 Minn. 32, 34, 81 N.W.2d 265, 266 (1957). As we said in *Hurney:*

> Unless otherwise agreed, [real estate agents] owe their principals ... a duty to use reasonable efforts to fully, fairly and timely disclose information to their principals within their knowledge, which is or may be material to the subject matter of their agency. Material information depends on the facts and circumstances of each case.

308 N.W.2d at 768–69 (citations omitted); Restatement (Second) of Torts § 299A.[5]

---

4. It should be noted that in 1998, the Legislature enacted SDCL 36–21A–138:

> No licensee acting as a buyer's ... agent owes any fiduciary duty or obligation to a customer. A licensee shall provide disclosure of all adverse material facts known by the licensee to any customer....

No one suggests that this statute retroactively applies here.

5. The Restatement (Second) of Torts § 299A provides:

> Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities.

Real estate agents are bound to exercise reasonable care, skill, and diligence in performing the transactions entrusted to them and are responsible for loss proximately resulting from their failure to do so.[6] *Witt,* 249 Minn. at 34, 81 N.W.2d at 266 (citations omitted). Any actions or omissions by agents in violation of the duties imposed upon them by their agency contract render them responsible to their principals for loss or damages. *Id.* (citing *Lake City Flouring Mill Co. v. McVean,* 32 Minn. 301, 20 N.W. 233 (1884); Restatement, Agency, §§ 385, 399.)

[¶ 14.] Here, plaintiffs stated that they would not have proceeded with the purchase of the house on the negotiated terms had they known about the revelations in the disclosure statement. The circuit court erred in ruling that Horn had no duty as the buyers' agent to inform them that the seller was legally required to provide a disclosure statement.

## 2. Statute of Limitations

 [¶ 15.] The trial court ruled that plaintiffs' claim is barred by the six-year statute of limitation in SDCL 15–2–13(1). Reasoning that the statute of limitations began to run on June 12, 1995, the date plaintiffs executed their offer to purchase, the trial court ruled that because the disclosure statement must be provided "before the buyer makes a written offer" the fact that the agent continued to represent plaintiffs beyond that time was of no consequence. *See* SDCL 43–4–38.

[¶ 16.] SDCL 43–4–38 requires that the disclosure statement be furnished before the buyer makes a written offer. In this case, no disclosure statement was furnished to plaintiffs. Horn's representation continued until the closing date in August. Even if the disclosure statement had been given late, it may have prompted further inquiry or a modification of the agreement. In fact, SDCL 43–4–39 provides for instances where a disclosure statement is not delivered until after the buyer has made a written offer.[7] A buyer has the right to "terminate" an offer within three to six days after receiving a late disclosure statement or an amended disclosure statement. Because even a late disclosure can alert buyers to problems that may cause the purchase agreement to be modified or terminated, Horn's obligation to advise his clients continued until the closing date. Thus, August 25, 1995, the date of closing, is the date on which the limitations period began to run. The complaint was served on August 6, 2001. The claim is not barred by the six-year statute of limitations.

[¶ 17.] Reversed and remanded for trial.

[¶ 18.] GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.

---

**6.** *See also* SDCL 36–21A–136 (enacted in 1998) (buyer's agent has duty to exercise reasonable skill and care for the client).

**7.** SDCL 43–4–39 provides:
If the disclosure statement or a material amendment to the disclosure statement is delivered to the buyer *after the buyer has made a written offer, the buyer may terminate the offer by delivering a written notice of termination to the seller or the seller's agent within three days after the disclosure statement or amendment is delivered in person or within six days after the disclosure statement or amendment is delivered by deposit in the mail.*
(Emphasis added.)