#25262-a-SLZ
**2010 SD 51**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

NATTYMAC CAPITAL LLC,                                    Plaintiff and Appellant,

v.

RICK and RAMONA PESEK, FIRST
DAKOTA NATIONAL BANK and
GETTY ABSTRACT AND TITLE COMPANY,          Defendants and Appellees,

RICK and RAMONA PESEK and                          Third Party Plaintiffs
FIRST DAKOTA NATIONAL BANK,                      and Appellees,

v.

MORTGAGE ELECTRONIC                              Third Party Defendant
REGISTRATION SYSTEMS, INC.,                       and Appellee.

* * * *
APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA
* * * *

HONORABLE STUART L. TIEDE
Judge

* * * *

MICHAEL F. TOBIN
PAUL W. TSCHETTER of
Boyce, Greenfield, Pashby,
 & Welk, LLP                                      Attorneys for plaintiff
Sioux Falls, South Dakota                         and appellant.

SANDER J. MOREHEAD
ROGER W. DAMGAARD of
Woods, Fuller, Shultz and Smith, P.C.            Attorneys for defendants/
Sioux Falls, South Dakota                        third party plaintiffs/appellees.

* * * *

ARGUED ON APRIL 28, 2010
OPINION FILED **06/23/10**

#25262

ZINTER, Justice

[¶1.]    A purchaser of a mortgage loan brought this declaratory action to invalidate a written satisfaction of its mortgage. The originating lender, who was servicing the loan, gave the satisfaction to a title company following payoff of the loan at a closing on a subsequent mortgage loan relating to the same property. The mortgage purchaser contended the satisfaction was invalid because it was not signed by the mortgagee identified in the mortgage. The mortgage purchaser also asserted claims of negligence against the title company. The circuit court granted summary judgment against the mortgage purchaser on all claims. We affirm.

*Facts and Procedural History*

[¶2.]    Because we are reviewing a summary judgment, we restate the facts in a light most favorable to the mortgage purchaser. This lawsuit arose following the sale of mortgage loans by ACT Mortgage Capital, a loan originator, to NattyMac Capital LLC, a purchaser of mortgage loans in the secondary market. Although the mortgage loans were sold to NattyMac, ACT was contractually obligated to service the loans. The Master Loan Purchase and Sale Agreement (Master Loan Agreement) between these parties provided that ACT was "an independent contractor of [NattyMac]," and ACT was required to service the loans "on behalf of" NattyMac in accordance with loan servicing procedures. Loan servicing procedures included accepting loan payments.[1]

---

1.    As consideration for servicing the loans, NattyMac agreed to pay ACT a "Service Incentive Fee." This fee was paid under an arrangement whereby funds collected from borrowers would "be offset against any Service Incentive Fees owed by [NattyMac] to [ACT] to the extent amounts have been so

(continued . . .)

-1-

[¶3.]     NattyMac and ACT were members of Mortgage Electronic Registration Systems, Inc. (MERS). MERS is a nation-wide clearinghouse for mortgage loans. MERS was established by the mortgage banking industry to hold, assign, and transfer interests in mortgage loans. MERS's members contract with MERS to electronically register and track servicing rights and beneficial ownership interests that are sold in secondary markets. MERS facilitates the assignment of mortgage liens by acting as a "nominee" mortgagee of record.

[¶4.]     This dispute developed following Dwight Duimstra's purchase of a residential property in Sioux Falls.[2] Duimstra's purchase was financed by one of the mortgage loans that was originated by ACT and subsequently sold to NattyMac. Under an agreement among NattyMac, ACT, and MERS, MERS was the named mortgagee in the mortgage, and ACT was designated as the loan servicer in the MERS system.

[¶5.]     Less than two months after Duimstra's purchase, Duimstra agreed to sell the property to Rick and Ramona Pesek. According to a MERS manual, the usual procedure for a mortgage payoff required the servicer of the mortgage loan to provide a payoff amount to the closing agent. The servicer would then receive the payoff and execute a lien release. The lien release was to be executed by one of MERS's certifying officers. Nelson Haws, an officer of ACT, had been appointed by

_____

(. . . continued)
        retained, provided that [ACT deposited] such amounts in [a] Settlement
        Account prior to such offset demand by [NattyMac]."

2.      The legal description of the property is: Lot 2D in Tract 2 of Pearson's First
        Addition to the City of Sioux Falls, Minnehaha County, South Dakota.

MERS as a certifying officer authorized to release mortgage liens, including the Duimstra mortgage.

[¶6.]     In preparation for the Pesek closing, Rita Barfoth of Getty Abstract and Title Company called MERS to locate the servicer of the Duimstra loan. MERS informed Barfoth that the loan servicer was ACT. Barfoth then requested ACT to provide a payoff statement, which ACT provided. During the subsequent closing of Peseks' loan, Getty sent ACT a check in the amount necessary to pay the Duimstra loan in full. ACT endorsed the check and deposited the funds in its account.

[¶7.]     Several days later, ACT sent Getty an executed satisfaction of the Duimstra mortgage. Nelson Haws had executed the satisfaction; yet, for unexplained reasons, the satisfaction indicated that the mortgage was satisfied "on behalf of" ACT rather than MERS, the mortgagee. Further, there was no assignment of record assigning the mortgage from MERS to ACT. Nevertheless, the satisfaction was recorded in the register of deeds office.

[¶8.]     Although the Master Loan Agreement required ACT to forward the payoff to NattyMac, ACT absconded and did not pay NattyMac.[3] NattyMac subsequently filed this declaratory action against Peseks and their mortgage lender, First Dakota National Bank. NattyMac sought a declaration that the satisfaction of the Duimstra mortgage was a nullity and that NattyMac's mortgage remained valid. NattyMac also asserted two negligence claims against Getty. Peseks, First

---

3.     At the summary judgment hearing, counsel for NattyMac stated to the court, "We all agree that ACT is the most mischievous party in this whole matter. They are gone."

Dakota and Getty (Defendants) moved for summary judgment.[4] The circuit court granted the motion, concluding that notwithstanding the defect in the satisfaction, the mortgage was satisfied by the payment to ACT.

*Satisfaction of the Mortgage*

[¶9.] There is no dispute that MERS, rather than ACT, was identified as the mortgagee in the mortgage and there was no recorded assignment of the mortgage from MERS to ACT. Because the satisfaction was executed on behalf of ACT rather than on behalf of MERS (the mortgagee), NattyMac argues that the satisfaction was ineffective and the mortgage remained valid under two recording statutes. "Statutory interpretation and application are questions of law." *Aspen Storage Inc. v. Flanagan*, 2005 SD 107, ¶ 5, 705 NW2d 863, 864. We review the circuit court's conclusions of law de novo. *Id.*

[¶10.] SDCL 44-8-14 is a typical recording statute, providing that in order to be discharged on the register of deeds records, a satisfaction must be signed by the mortgagee or its assignee of record:

> A recorded mortgage may be discharged upon the records of a register of deeds by filing for record and causing to be recorded at length a certificate *signed by the mortgagee* or his successor in interest by succession, assignment, representation or otherwise, acknowledged, or proved and certified as prescribed by the statutes relating to recording acts, fully *stating the names of the mortgagor, the mortgagee*[.]

---

4.    Peseks and First Dakota also filed a third-party complaint against MERS. Peseks and First Dakota asserted that if the satisfaction was a legal nullity or the mortgage remained valid, then MERS should deliver a new satisfaction to the Peseks and First Dakota. Because the circuit court concluded that Duimstra's mortgage was satisfied, this claim was not pursued.

(Emphasis added.) SDCL 44-8-6 also provides that a satisfaction "must show the name . . . of the mortgagee or assignee." NattyMac argues that because the satisfaction did not identify the mortgagee and because it was not executed "on behalf of" the designated mortgagee, the mortgage has not been satisfied and remains valid.

[¶11.] Defendants point out that under the agreements among ACT, NattyMac, and MERS, ACT was NattyMac's servicing agent for receiving loan payments and satisfying mortgage liens. Defendants also point out that there is no dispute that ACT, in its capacity as NattyMac's servicing agent, received the full loan payoff at the closing. Defendants argue that under the circumstances, the mortgage was extinguished as a matter of law notwithstanding any defects in the satisfaction. We agree.

[¶12.] It is generally recognized that "a mortgage is extinguished by the payment of the debt. The mortgagee has no property in such mortgage after such payment." Shriver v. Sims, 127 Neb 374, 255 NW 60, 63 (1934). *See also* SDCL 44-3-8 (providing that "[w]henever any mortgage . . . has been satisfied *either by payment,* foreclosure, *or* other legal means, the holder of such lien shall, within thirty days of satisfaction, deliver a sworn satisfaction to the debtor") (emphasis added).

[¶13.] This rule also applies when the payment is received by an entity other than the mortgagee if that entity is authorized to receive payment. The Nebraska Supreme Court explained: "When the money for the payment of a note secured by mortgage has reached the hands of an agent authorized to collect it, the debt is

paid, and the mortgagor is entitled to have the mortgage given to secure the debt canceled." *Id.* Furthermore, a formal recordable satisfaction is not necessary to discharge the mortgage. "The payment or satisfaction of the mortgage debt avoids the mortgage deed. The failure to enter satisfaction upon the margin of the record may subject the mortgagee to penalties, but has no effect to keep the mortgage in existence." *Id.* The reasoning of the rule is that because "[the agent is] authorized to collect the debt and . . . [possess] the money which he was authorized to get, without any liability remaining for his principal, the mortgage . . . is paid and extinguished." *Id. See also* Skott v. Bank of America Illinois, 266 Ga 532, 533, 468 SE2d 359, 360 (1996) (concluding that the authorized servicing agent had authority to receive payments on the loan, including the payoff check, and that any security interest in the property by virtue of an assignment was satisfied by the payment in full to the servicing agent); Rockford Life Ins. Co. v. Rios, 128 Ill2ndApp 190, 195, 261 NE2d 530, 533 (IllCtApp 1970) (noting that "[i]f payment [was] made to an authorized [servicing] agent . . . , the payor is not bound to inquire into the application of such payment").

[¶14.]     The Wisconsin Supreme Court indicated that the "[a]uthorities are in general accord with the proposition that payment of an indebtedness on a note secured by a mortgage on real estate extinguishes the mortgage lien without satisfaction thereof of record or in writing." Moore v. Benjamin, 228 Wis 591, 591, 280 NW 340, 341 (1938). Although unpublished, *Klapmeier v. Peoples Nat'l Bank of Mora*, 2008 WL 2967033 (MinnCtApp 2008), restates the Minnesota Supreme Court's similar view:

> [O]nce a mortgage debt has been paid in full, and evidence thereof is surrendered to the mortgagor, the mortgage is completely extinguished because "it was a mere incident of the debt." *Hendricks v. Hess,* 112 Minn. 252, 256, 127 N.W. 995, 997 (1910). Moreover, *even if a mortgage that was paid in full was not satisfied of record, the mortgage is still completely extinguished. See id.* (holding that "it is well settled that an assignee of a mortgage takes it subject to the defense that it has been paid, even though not discharged of record").

*Id.* \*3 (emphasis added).

[¶15.]     In this case, ACT was the loan servicer under its contract with NattyMac. Pursuant to that contract, ACT received the Duimstra loan payoff from Getty at the loan closing. Therefore, even though ACT did not pay NattyMac, Getty's payment to NattyMac's servicing entity extinguished the mortgage notwithstanding the subsequent failure to comply with recording statute formalities.

[¶16.]     We acknowledge NattyMac's point that the language of the recording statutes requires identification and signature of the mortgagee. However, these statutes merely prescribe the requirements for recording satisfactions as opposed to regulating the contractual relationship between mortgagors and mortgagees. The language of the recording statutes reflects a purpose to do no more than provide third-party notification by discharging the mortgage "*upon the records* of a register of deeds[.]" *See* SDCL 44-8-14 (emphasis added). Therefore, we conclude that to the extent ACT had authority to collect mortgage loan payments on behalf of NattyMac, ACT's receipt of the loan payoff satisfied the mortgage notwithstanding the subsequent failure to comply with satisfaction recording statutes.

*ACT's Authority to Accept the Loan Payoff on Behalf of NattyMac*

[¶17.]     An agent's authority to receive payment on behalf of its principal includes the authority to satisfy the mortgage. Restatement (Second) of Agency § 72(b) (1958) provides: "Unless otherwise agreed, authority to receive payment includes authority . . . to surrender to the payer any security for or evidence of the debt to which he is entitled and to give him such receipt as it is usual to give." A comment to this section states: "The agent is also authorized to make any release of record which is required, as where a statute requires a mortgagee upon payment of the mortgage to enter a release in the office of the recorder." *Id.* § 72(b) cmt. g. But NattyMac argues ACT did not have authority – actual or ostensible – to accept the loan payoff for NattyMac. The existence of an agency relationship is usually a question of fact. Zee v. Assam, 336 NW2d 162, 164 (SD 1983). Like all factual matters, the issue is appropriate for summary judgment if the entire record reveals that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fisher v. Kahler, 2002 SD 30, ¶ 5, 641 NW2d 122, 124-25.

[¶18.]     Whether an agency relationship has been created depends on the relationship of the parties as they exist under their agreements or acts. Dahl v. Sittner, 429 NW2d 458, 462 (SD 1988). In this case, there is no dispute of material fact regarding the two agreements defining existence and scope of the contractual relationships among NattyMac, ACT, and MERS. Those agreements reflect that although ACT was designated as an independent contractor for certain purposes,

ACT was NattyMac's agent for purposes of collecting loan payments and executing satisfactions on behalf of MERS.[5]

[¶19.] And, at the summary judgment hearing, the court specifically asked NattyMac's counsel: "Did ACT have the authority to satisfy the mortgages on behalf of NattyMac, to receive payment and release the lien?" NattyMac conceded, "I do believe that ACT had the authority to receive money on behalf of NattyMac[.]" Later in the hearing, NattyMac again conceded: "I do concede that ACT was a proper party to receive the payoff." Therefore, NattyMac may not now argue on appeal that ACT was not NattyMac's contractual agent for purposes of collecting loan payments. *See generally* Alvine Family Ltd. P'shp v. Hagemann, 2010 SD 28, ¶ 21, 780 NW2d 507, 514 ("We have consistently held that this Court may not review theories argued for the first time on appeal."). Because ACT had authority to accept

---

5. Although Section 4.01 of the Master Loan Agreement provided that ACT was an "independent contractor," an independent contractor may also be an agent. *See* Derrick v. The Drolson Co., 244 Minn 144, 148, 69 NW2d 124, 128 (1955). *See also* Restatement (Second) of Agency §14N (1958) ("One who contracts to act on behalf of another and subject to the other's control except with respect to his physical conduct is an agent and also an independent contractor."). As the comment explains:

> In fact, most of the persons known as agents, that is, brokers, factors, attorneys, collection agencies, and selling agencies are independent contractors as the term is used in the Restatement of this Subject, since they are contractors but, although employed to perform services, are not subject to the control or right to control of the principal with respect to their physical conduct in the performance of the services. However, they fall within the category of agents.

*Id.* §14N cmt. a.

the loan payoff, we affirm the circuit court's summary judgment on the mortgage satisfaction issue.

*NattyMac's Negligence Claim against Getty*

[¶20.] NattyMac also argues that the circuit court erred in granting summary judgment to Getty on NattyMac's claims of negligence. NattyMac asserts two claims: that Getty was negligent in sending the payoff to ACT and that Getty was negligent because it accepted a satisfaction not containing the mortgagee's identification and signature.

[¶21.] NattyMac argued its first claim at the beginning of the summary judgment hearing. Later in the hearing, however, NattyMac waived the claim that Getty was negligent in sending the payment to ACT. Counsel conceded: "[C]an I stand up here, Your Honor, and say that Getty sent the money to the wrong party? I can't say that, Your Honor, because [ACT] was listed in the [MERS] system[.]" Because of its concession, NattyMac has no claim for negligence in sending the payoff to ACT.

[¶22.] NattyMac also has no claim for negligence with respect to Getty's acceptance of the satisfaction. The causally related harm element of this claim is the satisfaction of NattyMac's mortgage by Getty's acceptance and recording of ACT's satisfaction. But we have concluded that Getty's payment automatically extinguished NattyMac's mortgage irrespective of any errors in ACT's satisfaction. Because the mortgage was satisfied by payment, Getty's subsequent acceptance of the satisfaction cannot be the basis for a negligence cause of action against Getty.

We affirm the circuit court's summary judgment on NattyMac's negligence claims against Getty.

[¶23.]    GILBERTSON, Chief Justice, and KONENKAMP, MEIERHENRY, and SEVERSON, Justices, concur.