2005 SD 117

**Monica BORDEAUX, Guardian, Ad Litem of G.B.F., Minor Child, Plaintiff and Appellant,**

v.

**SHANNON COUNTY SCHOOLS, Defendant and Appellee.**

**No. 23563.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 3, 2005.

Decided Nov. 30, 2005.

Terry L. Pechota of Pechota Law Office, Rapid City, South Dakota, Attorney for plaintiff and appellant.

Thomas H. Harmon of Tieszen Law Office, Pierre, South Dakota, Attorneys for defendant and appellee.

KONENKAMP, Justice.

[¶ 1.] In this personal injury action, the circuit court granted summary judgment for the defendant. We affirm.

### Background

[¶ 2.] On Saturday, April 26, 2003, Monica Bordeaux brought her eleven-year-old son, G.B.F., to Billy Mills Hall in Pine Ridge, South Dakota, so that he could participate in a Hand Game tournament.[1] Later that day, G.B.F. left the tournament to go to a convenience store across the road. He was hit and injured by a drunk driver. Bordeaux, as G.B.F.'s guardian, brought suit against the Shannon County School District for negligence, seeking damages for her son's injuries.

[¶ 3.] The Hand Game tournament was sponsored by Youth Opportunity and Pine Ridge Village. The tournament was open to both youth and adult teams. Will Peters was the tournament coordinator. Peters sought tournament participants by advertising through radio commercials and by distributing flyers. One flyer reached Kathy Red Cloud, a teacher and Hand Game coach at Wolf Creek School in the

1. The Hand Game is a Native American guessing game played to singing and drumming and usually played by teams. Stewart Culin, *Games of the North American Indian* (Dover Publications, 1975).

Shannon County School District. Red Cloud circulated the flyer among her students "the same way [she] would any community event." Some of her students decided to play in the tournament, including G.B.F., and Red Cloud informed them they would have to provide their own transportation.

[¶ 4.] According to Red Cloud, she also decided to attend the tournament, but only as a participant on a team in the adult division. She volunteered to bring pizzas donated by Pizza Hut for all the tournament participants. Because her car was not suitable to carry the pizzas, she was given permission by her school's assistant principal to drive a vehicle owned by the Shannon County School District. However, she did not agree to transport any students to the tournament or agree to supervise any students while at the tournament. Her affidavit indicates that she "was not at all involved with the children's activity." She also said that she "did not transport any children, either to or from the Hand Game Tournament, to their homes or anywhere else." On the other hand, according to Monica Bordeaux's affidavit, when Bordeaux arrived at the tournament with her son, Red Cloud told her that "she would take all the team players home." Bordeaux also said in her affidavit that, after the accident, Red Cloud told her that she "made sure none of the players went outside and that all of the players had rides home before [Red Cloud] released them from her care."

[¶ 5.] In her complaint, brought solely against the School District, Monica Bordeaux alleged that her son was in the "care, custody, and control of the Shannon County Public Schools and its employees," and that the Hand Game tournament was "sanctioned by the Shannon County Public Schools." Her complaint further alleged:

Shannon County Public Schools and its employees were negligent, including but not limited to failing to adequately monitor students, failing to keep students from leaving Billy Mills Hall, failing to adequately inform and warn the students of the danger of leaving Billy Mills Hall and crossing the highway, failing to have adults present with children when they left Billy Mills Hall, failing to ensure that if students left the Hall they would be safe and not in danger, and for such other reasons as will be proven at trial.

[¶ 6.] Bordeaux argues that Red Cloud was the coach for the school's Hand Game team and that she was acting as the team's coach for this tournament. This was a school-sanctioned event, Bordeaux asserts, because Red Cloud passed out "activity attendance permission slips to members of the [School] team" and told Bordeaux that she would drive the students home after the tournament. Bordeaux said that she signed the permission slip, but they were never collected at school. Bordeaux also relies on a comment made by Will Peters, the tournament coordinator, that it was his "assumption that whoever brought the schools' teams was responsible for them."

[¶ 7.] Before G.B.F. left the tournament to go to Big Bat's convenience store with two other boys, they first asked for permission from Red Cloud. She told them that they could go, but to be careful. Bordeaux argues that this request and grant of permission proves that G.B.F. was under the supervision of Red Cloud and hence in the care, custody, and control of the School District.

[¶ 8.] The School District moved to dismiss on the grounds that the tournament "was not sponsored or held in connection with any Shannon County School activity, and that no Shannon County employees were performing the duties for Shannon

County School at the time and place alleged." In her affidavit, the School District superintendent explained that "Billy Mills Hall in Pine Ridge, South Dakota, is not a property belonging to or under the control of the Shannon County Schools and the Shannon County School District was not involved in any manner in the 'Hand Game Tournament' held on April 26, 2003."

[¶ 9.] The circuit court and the parties agreed that the court could consider matters outside the pleadings, and thus the School District's motion to dismiss was to be treated as a motion for summary judgment.[2] It was also understood that in lieu of a hearing, the parties would submit their affidavits and responses no later than November 15, 2004. Thereafter, it was further agreed that if the court desired an oral hearing, it would advise counsel. On January 13, 2005, the court notified the parties by letter decision that summary judgment would be granted to the School District. On January 20, 2005, the court signed the summary judgment order of dismissal. It was filed on January 25, 2005.

[¶ 10.] On January 24, 2005, invoking SDCL 15-6-56(f), Bordeaux's attorney hand delivered an affidavit requesting that the court withhold judgment and grant the plaintiff a continuance for further discovery.[3] The record does not reflect a ruling by the court on the substance of this request or its timeliness. "If the trial court fails to decide or rule on a motion, nothing is presented for review in the appellate court." *Jameson v. Jameson*, 1999 SD 129, ¶ 25, 600 N.W.2d 577, 583 (citations omitted). Bordeaux appeals claiming that there are genuine issues of material fact and that "this matter should be set for further discovery and trial."

### Standard of Review

[¶ 11.] "Under our familiar standard of review in summary judgment cases, we decide only whether genuine issues of material fact exist and whether the law was correctly applied." *Schulte v. Progressive Northern Ins. Co.*, 2005 SD 75, ¶ 5, 699 N.W.2d 437, 438 (citing *Kobbeman v. Oleson*, 1998 SD 20, ¶ 4, 574 N.W.2d 633, 635). "Summary judgment is proper in negligence cases if no duty exists as a matter of law." *Pierce v. City of Belle Fourche*, 2001 SD 41, ¶ 8, 624 N.W.2d 353, 355 (citing *Peterson v. Spink Elec. Co-op., Inc.*, 1998 SD 60, ¶ 8, 578 N.W.2d 589, 590–91). Determining whether a duty exists and "defining its limitations remain a function of the courts" under de novo review. *Fisher v. Kahler*, 2002 SD 30, ¶ 6, 641 N.W.2d 122, 125 (citing *Tipton v. Town of Tabor*, 1997 SD 96, ¶ 12, 567 N.W.2d 351, 357 (*Tipton II* )).

### Analysis and Decision

[¶ 12.] The circuit court found that there were no genuine issues of material fact to preclude summary judgment. "On review, we apply the same test as the trial court: we probe the record for material facts, resolve disputed facts in favor of

---

2. The School District filed affidavits from the superintendent of Shannon County Schools, the assistant principal at Wolf Creek, and Red Cloud along with a copy of the tournament flyer and a statement of the incident from Red Cloud to the superintendent. In response, Bordeaux submitted her affidavit, along with affidavits from G.B.F., and Will Peters.

3. SDCL 15–6–56(f) provides:

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

the nonmoving party, and decide whether the moving party is entitled to a judgment as a matter of law." *Fisher*, 2002 SD 30, ¶ 5, 641 N.W.2d at 125 (citing *Sorrels v. Queen of Peace Hosp.*, 1999 SD 133, ¶ 5, 601 N.W.2d 606, 608).

[¶ 13.] Although the circuit court recognized that granting summary judgment in a negligence case is "extremely rare," it concluded that a duty did not exist between the School District and G.B.F. at the Hand Game tournament because "the tournament was not sanction[ed], approved, or part of the extracurricular activities of the School District," and Red Cloud was there as a private citizen. Even after accepting the fact that Red Cloud gave permission to G.B.F. to leave the Hall for Big Bat's, the court held that this fact "certainly does not arise to an allegation of supervision, control, and/or negligence."

[¶ 14.] Nevertheless, Bordeaux claims that Red Cloud was acting as an agent of the School District when she gave G.B.F. permission and that this act was within the scope of her employment. We require "those resisting summary judgment [to] show that they will be able to place sufficient evidence in the record at trial to support findings on all the elements on which they have the burden of proof." *Chem–Age Industries, Inc. v. Glover*, 2002 SD 122, ¶ 18, 652 N.W.2d 756, 765 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). In fact, "SDCL 15–6–56(e) requires the opposing party to be diligent in resisting a motion for summary judgment, and mere general allegations and denials which do not set forth specific facts will not prevent the issuance of a judgment." *Hughes–Johnson Co. v. Dakota Midland Hosp.*, 86 S.D. 361, 364, 195 N.W.2d 519, 521 (1972). *See also Casazza v. State*, 2000 SD 120, ¶ 16, 616 N.W.2d 872, 876. Accordingly, Bordeaux must present more than "[u]nsupported conclusions and speculative statements, [which] do not raise a genuine issue of fact." *Paradigm Hotel Mortg. Fund v. Sioux Falls Hotel Co., Inc.*, 511 N.W.2d 567, 569 (S.D.1994) (citing *Home Fed. Sav. & Loan Assoc. v. First Nat'l Bank*, 405 N.W.2d 655, 658 (S.D.1987)).

[¶ 15.] To prevail on her negligence claim, Bordeaux must establish that (1) the School District owed G.B.F. a duty, (2) the duty was breached, and (3) the cause of G.B.F.'s injury was the School District's breach of its duty. *See Kuehl v. Horner Lumber Co.*, 2004 SD 48, ¶ 10, 678 N.W.2d 809, 812 (quoting *Stevens v. Wood Sawmill, Inc.*, 426 N.W.2d 13, 14 (S.D. 1988)). Absent a duty, the School District cannot be held liable in negligence for G.B.F.'s injuries. The theory Bordeaux presents to establish the School District's duty is the existence of an agency relationship. Bordeaux contends that liability attaches, first, because an actual agency relationship existed (duty), then, Red Cloud breached that duty when she "failed to use reasonable care to ensure the safety of the students", and, last, G.B.F. was injured as a direct and proximate result of this breach.

[¶ 16.] Bordeaux claims that an agency relationship existed because the School District "intentionally or by want of ordinary care allowed Kathy Red Cloud to believe that she was an agent of defendant." An agency relationship is defined as "the representation of one called the principal by another called the agent in dealing with third persons." SDCL 59–1–1. The record reflects that Red Cloud declared that she did not act as an agent at the tournament and instead she participated in her own right on an adult team. Specifically, Red Cloud claims she "neither sought nor received permission or authori-

ty from [her] supervisor or the School District to participate in this activity." The assistant principal further attested that he did not "assign [Red Cloud] to supervise any of the activities or children," even though he understood "that she may have volunteered her own time to assist with children from her class who were going to participate." And he also concedes that he authorized Red Cloud to use a School District owned vehicle on the day of the tournament.

[¶ 17.] Bordeaux presents no evidence from which it can be inferred that the School District appointed Red Cloud to act as a representative of the School District in the tournament. Consequently, we must then consider whether the School District "affirmatively, intentionally, or by lack of ordinary care cause[d] a third party to believe another [was] serving as [its] agent." *Dahl v. Sittner*, 429 N.W.2d 458, 462 (S.D.1988); SDCL 59–1–5 (defining ostensible agency). Bordeaux directs us to the allegations contained within three affidavits, the sole support Bordeaux submitted in opposition to summary judgment. She presents the following claims. First, Red Cloud distributed permission slips to the students but never collected them. Second, Red Cloud drove a School District owned vehicle to the tournament. Third, she told Bordeaux she would drive the students home after the tournament. Fourth, G.B.F. asked Red Cloud for permission before leaving the Hall for Big Bat's. Fifth and last, Will Peters stated it was his "assumption that who ever brought the schools' teams was responsible for them."

[¶ 18.] As the nonmoving party, Bordeaux is entitled to have her factual assertions accepted as true, along with all their reasonable inferences. But, for two reasons, we decline to attach the same significance that Bordeaux assigns to her allegation that Red Cloud distributed "activity attendance permission slips to" student members of the school team. First, the only support for this assertion is Bordeaux's statement itself. Red Cloud only conceded that she passed out a flyer. And, the tournament coordinator, Will Peters, corroborates that he distributed flyers to the schools. No permission slip was placed before the court and the record contains no reference to its terms. We have no idea whether this was a school form or a tournament form or what conditions it might have held with respect to student participation. Second, Bordeaux concedes that Red Cloud never collected these "permission slips." Thus, even if they were distributed for some school purpose, there is no evidence that the purpose was consummated. Moreover, there is no allegation, much less evidence, that any other parent signed these permission slips for the tournament.

[¶ 19.] While it is undisputed that G.B.F. was brought to Billy Mills Hall by Bordeaux, Bordeaux insists that Red Cloud's statement that she would drive G.B.F. home afterwards was proof that Red Cloud was acting on behalf of the School District and that Red Cloud, on behalf of the School District, assumed a duty to supervise G.B.F. during the tournament. Bordeaux next argues that because Red Cloud drove a School District vehicle, the existence of a duty is proven because Red Cloud is a School District employee and the Hand Game coach.[4] However, the allegations establishing an agency relationship "must be traceable to the principal and cannot be established

4. In her appellate brief, Bordeaux states that at the tournament Red Cloud "assisted, coached, and supervised the children com- prising the team from her Wolf Creek class." No affidavit in the record supports this assertion.

solely by the acts, declarations or conduct of an agent." *See Kasselder v. Kapperman,* 316 N.W.2d 628, 630 (S.D.1982). In addition, purely because an agency relationship exists between Red Cloud and the School District, does not mean that it can be assumed that an agency relationship exists at all times.

[¶ 20.] The only factual allegation in the record connecting the School District to the event is that Red Cloud drove a School District vehicle to the tournament. As we explained earlier, there are four elements Bordeaux is required to prove before the School District can be held liable for negligence. And based on the record, even if we assume that Red Cloud gave G.B.F. permission to cross the street and told Bordeaux she would drive G.B.F. home, we cannot infer that the School District accepted a duty (through Red Cloud) to control and supervise G.B.F. at the tournament. "A duty will not spring up at the mere behest of those with grievances...." *Fisher,* 2002 SD 30, ¶ 6, 641 N.W.2d at 125.

[¶ 21.] We conclude that there was an insufficient nexus between Red Cloud's activities and the School District to show that the School District, as alleged by Bordeaux, "sanctioned" the tournament and accepted the "care, custody, and control" of its student Hand Game players. These students were participating in a privately sponsored tournament on a Saturday in a public building not owned or operated by the School District. Bordeaux had the burden to present enough evidence in opposition to the motion for summary judgment to raise a question of material fact. This she has failed to do. Accordingly, we hold that Bordeaux's allegations, without further support, were insufficient to establish a dispute of a material fact, and, therefore, summary judgment was properly granted.

[¶ 22.] Affirmed.

[¶ 23.] GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.