#24389-aff in pt, rev in pt & rem-JKK

**2008 SD 1**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

CITIBANK SOUTH DAKOTA, N.A.,                     Plaintiff and Appellee,

  v.

WAYNE E. SCHMIDT,                                              Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
WALWORTH COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE SCOTT P. MYREN
Judge

\* \* \* \*

ROBERT J. BREIT of
Breit Law Offices                                  Attorneys for plaintiff
Sioux Falls, South Dakota                    and appellee.

WAYNE E. SCHMIDT                            Pro Se defendant
Mobridge, South Dakota                       and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 27, 2007

OPINION FILED **01/02/08**

#24389

KONENKAMP, Justice

[¶1.]      In this collection action, a debtor representing himself advances several dubious legal theories on why he should not be responsible for paying his entire credit card debt.  In circuit court, a judgment was entered against him for the whole amount.  Despite some of the debtor's questionable arguments, however, it appears that he was in fact defrauded in a telemarketing swindle.  Therefore, part of his debt must be reexamined.  We affirm in part, reverse in part, and remand for further proceedings.

**Background**

[¶2.]      Wayne E. Schmidt of Mobridge, South Dakota, entered into a credit card agreement with Citibank of South Dakota, N.A.  He incurred charges on his card and, for a while, made monthly payments on his account.  From July through September 2004, Schmidt used his card for five transactions with an entity in New York calling itself New World Coin and Rarities (New World).  It turned out to be a scam.  According to the United States Attorney for the Eastern District of New York, New World was a racket operated as a rare coin investment scheme, targeting the elderly.  To persuade the victims to buy "rare" coins, which were in reality worthless or nonexistent, telemarketers fraudulently told their elderly prey that the coins they purchased could be resold at substantially greater prices in Europe and that the company would facilitate those resales.  As explained by the United States Attorney, "[t]he victims in this case, thinking they were making wise investments based on information provided by the operators of this boiler room, New World Coin and Rarities, tossed their life savings away to the tune of over one million dollars."

-1-

Two prime defendants, Steven and Thomas Fasano, indicted on fraud charges in connection with this scheme, pleaded guilty in United States District Court in April 2005.[1]

[¶3.] Schmidt claimed that his account should not be charged for these transactions because he was defrauded. In response, Citibank issued conditional credits and reviewed his claim. After its review, Citibank credited Schmidt with $4,000, but it ruled that the remaining New World charge of $7000 was "valid." Still, insisting that he was not responsible for the New World transactions or, for that matter, any other of his charges, Schmidt stopped making payments on his account.

[¶4.] Citibank declared the entire account balance of $19,279.65 due and owing and brought suit to recover the debt, along with its attorney's fees and costs. When Citibank moved for summary judgment, Schmidt, who represented himself, appeared in court with certain documents, which the circuit court treated as his response. Schmidt later submitted an affidavit after the court gave him additional time. One document Schmidt offered was a Better Business Bureau report about New World being shut down after fraud charges were brought against its owners. One other document Schmidt provided was an arbitration award against Citibank from another dubious entity, Dispute Arbitration Resolution Group. Deeming this

---

1. Schmidt supplied only a disjointed assortment of details to the circuit court. Additional information we take judicial notice of from the docket of the United States District Court for the Eastern District of New York, and the United States Department of Justice website at http://www.usdoj.gov/usao/nye/pr/2005/2005jan20.html. *See* SDCL 19-10-2 (2) (Rule 201(b)(2)); SDCL 19-10-3 (Rule 201(c)).

"award" to be invalid, the circuit court gave no credit to it and granted summary judgment for Citibank. Schmidt appeals.

### Analysis and Decision

[¶5.] As in circuit court, Schmidt, who claims he cannot afford a lawyer, represents himself in this appeal. His submissions make it difficult at first to fathom exactly what happened. But now armed with the federal court materials on how the rare coin scheme worked, we can piece together the circumstances. Schmidt told the circuit court that he had a package deal with New World that was never consummated. He gave the court a copy of a 2004 "contract" he made with a company purported to be in London, United Kingdom, to sell certain coins for $131,900. According to Schmidt, he agreed to purchase these coins from New World only on the condition that New World "would resell the coins" to Winston Rarities of London, undoubtedly a nonexistent company. As detailed by the United States Attorney in New York, victims were induced to buy bogus rare coins by advising them that a bid had already been received for the purchase of the victim's coins at a substantial profit to the victim. Based on our present knowledge of events, we can deduce that the coins Schmidt bought, which he denies receiving, were worthless in any event. Citibank obviously saw some merit in Schmidt's plight because it credited his account with $4,000 of the $11,000 charged by New World.

[¶6.] Schmidt never filed a formal answer to Citibank's complaint, but he did file a responsive letter, which the circuit court took as his answer. In the letter, Schmidt explained that he was persuaded to purchase coins from New World, which he never received. Also, at the invitation of the circuit court, Schmidt later filed an

affidavit in response to the affidavits filed by Citibank. In this affidavit, Schmidt reiterated that "he has not received any of the coins for which New World Rarities has charged his account $11,000. . . ." The circuit court considered Schmidt's responses inadequate to preclude summary judgment.

[¶7.]         Schmidt now argues that South Dakota courts should be required to explain procedures like summary judgments to civil defendants who represent themselves. If people choose to appear in court on their own, they must familiarize themselves with the procedures and laws governing their cases. Judges cannot ethically advise litigants on how to advocate their positions. In view of the increasing number of pro se litigants, however, the Unified Judicial System now provides legal guides for people who want to represent themselves in court. *See* "A Guide for Representing Yourself in South Dakota Courts," Form UJS-300 Rev.07/2007, available at www.sdjudicial.com. As explained in this publication, court staff cannot "[g]ive advice or information to one party over another or take sides in a case."

[¶8.]         It should be unmistakable to lawyers and laypersons alike that when facing a motion for summary judgment, the opposing party must "be diligent in resisting [the motion], and mere general allegations and denials which do not set forth specific facts will not prevent the issuance of a judgment." Bordeaux v. Shannon County Schools, 2005 SD 117, ¶14, 707 NW2d 123, 127 (quoting Hughes-Johnson Co. v. Dakota Midland Hosp., 86 SD 361, 364, 195 NW2d 519, 521 (1972)); *see also* SDCL 15-6-56(e); Chem-Age Industries, Inc. v. Glover, 2002 SD 122, ¶18, 652 NW2d 756, 765. On appeal, we will affirm summary judgment when the facts

and law are clear and no genuine issues of material fact exist. *Bordeaux*, 2005 SD 117, ¶11, 707 NW2d at 126 (citations omitted). Despite Schmidt's claim that he was not informed of his rights, the record shows that, within the bounds of judicial ethics, the circuit judge did explain to Schmidt the basic rules applicable to summary judgments. Schmidt answered that he understood what the judge had explained. The judge also allowed Schmidt to submit, after the hearing, certain documents as his response, when normally responses to a motion for summary judgment must be submitted before the hearing.

[¶9.] Illustrating too well perhaps the pitfalls of self-representation, Schmidt advances a perplexing array of contentions having little or no relation to the issue in this case. These claims need not be repeated here. Most of them have been found meritless by numerous courts around the country, and Schmidt cites no legal authority to conclude otherwise.

[¶10.] We will address, nevertheless, two of Schmidt's more peculiar theories on why he should not have to pay any of his credit card debt. Schmidt presented the circuit court with an arbitration award from an operation in Las Vegas, Nevada, called Dispute Resolution Arbitration Group (DRAG). Schmidt contends that this award concludes the matter in his favor. The award was based on information only Schmidt provided. Citibank did not participate. The "arbitrator" heard one side of the case and concluded that Citibank committed, among other things, "ultra vires conduct" and deceptive trade practices. As a result, the "award" not only eliminated Schmidt's entire debt, but also granted him a large monetary sum against Citibank.

Attached to Schmidt's reply brief is a letter from DRAG. The letter gives considerable insight into the devious nature of this outfit. It states,

> For those individuals who feel they should pay for what they've used (such as credit card purchases or student loans), please let me remind you that the bank's purpose is to keep people in debt through deceit. So I submit to you, why should you pay on something that was secured by their intentional failure to disclose the true terms of your debt?

DRAG claims that it will "eliminate the debt" and "show a positive credit rating on [the] eliminated accounts[.]" Its printed material also states: "Set Yourself Free! It has worked flawlessly for thousands of people and it will work for you!" DRAG delivered as advertised: its "arbitration award" against Citibank was predetermined.

[¶11.] We do not know what, if anything, Schmidt paid for his "arbitration." In the end, however, it becomes obvious that to avoid his loss from one fraud, Schmidt fell into the clutch of another. Whether he was truly a victim of this counterfeit arbitration, or whether he was a willing participant, we cannot discern from the record. In any event, a court is entitled to vacate an arbitration award procured by fraud. SDCL 21-25A-24(1). The circuit court rightly gave no credence to DRAG.[2]

---

2. A federal district court in Nevada recently entered an injunction against DRAG and found its owner, Mark Swanson, liable for civil conspiracy, intentional interference with contractual relations, and defamation, all in connection with these fake arbitration awards. Chase Bank USA, N.A. v. Dispute Resolution Arbitration Group, 2007 WL 1577853 (DNev May 31, 2007) (unpublished).

[¶12.]     By far the most bizarre of Schmidt's claims is that he should not have to repay his entire credit card debt because Citibank "monetized" his signature. In his view, through the device of signature "monetization," his credit card charges, in whatever amount, have already been paid in full. In reading the literature Schmidt submitted in court from the purveyors of DRAG, it appears that this flummery came from them. In any case, no matter what the term "monetize" may mean in financial parlance, in the context of this case, it is utter gibberish.

[¶13.]     When Citibank brought its motion for summary judgment, it presented an affidavit and documentary evidence that Schmidt had a valid account with Citibank, made charges, and failed to make payment on those charges. With respect to the New World charges, at the summary judgment hearing counsel for Citibank argued that although Schmidt did timely notify Citibank that he disputed the $11,000 in charges to his account, his claim could not be honored because, in accord with the credit card agreement, Schmidt "must have made the purchase in [his] home state or, if not within [his] home state, within 100 miles of [his] current address."[3] Schmidt's response, larded though it was with irrelevancies, managed to

---

3.   We have never examined the implications of a 100-mile limit in a credit card clause. Nothing in the record indicates whether the circuit court specifically ruled on it. Should it apply in a case of pure fraud? If it does apply, some jurisdictions have established a limitation on its application. They have concluded that whether a transaction occurred within 100 miles of the cardholder's resident address depends entirely on where the contract was formed. *In re* Standard Financial Management Corp., 94 BR 231, 238 (BkrtcyDMass 1988); Citibank (South Dakota), N.A. v. Mincks, 135 SW3d 545, 554 n8 (MoCtApp 2004); Singer v. Chase Manhattan Bank, 890 P2d 1305, 1306-07 (Nev 1995). We know this was a telemarketing scam. If a contract was deemed to have been formed in a cardholder's resident state, the 100-mile limitation will not apply. The full extent of the fraud and the

(continued . . .)

outline the fact that he was defrauded by telemarketers who were later arrested and indicted, and that he had timely protested the charges on his credit card. Obviously, he did not present his case with the precision of a seasoned lawyer, but that is not our standard.

[¶14.] Despite Schmidt's unskilled advocacy, there appears to be genuine issues of material fact precluding summary judgment. *See* SDCL 15-6-56(c). "Summary judgment is an extreme remedy and should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue as to material fact should be resolved against the movant[.]" S.D. Dept. of Rev. v. Thiewes, 448 NW2d 1, 2 (SD 1989) (citing Wilson v. Great Northern Ry. Co., 83 SD 207, 212, 157 NW2d 19, 21 (1968)). Even a poorly self-represented litigant deserves fair treatment, especially considering that the burden of proof is on Citibank, as the party moving for summary judgment, and the "benefit of any doubt" on whether there is a material issue of fact goes to Schmidt, as the nonmoving party. *See* Trammell v. Prairie States Ins. Co., 473 NW2d 460, 462 (SD 1991).

[¶15.] Acknowledging the arrant fraud perpetrated against Schmidt in the New World swindle, and the fact that these charges were presented to the circuit court as a billing dispute, we remand for further proceedings to determine what amount, if any, Schmidt owes Citibank on those charges. Along with any other applicable state and federal laws, the circuit court should consider the Truth in

_____

(. . . continued)

possible implications of the 100-mile rule implicate genuine issues of material fact.

Lending Law, codified in the Consumer Credit Protection Act, 15 USC §§ 1601-1700; Truth and Lending Reg. Z, 12 CFR §§ 226.1-226.36; and the Fair Credit Billing Act, 15 USC §§ 1666-1666j.

[¶16.]    On the other hand, Schmidt has no valid defense for not paying his remaining credit card charges incurred for everything except the New World transactions. Accordingly, Citibank's judgment against Schmidt on all claims for credit card charges other than from New World are affirmed.

[¶17.]    Affirmed in part, reversed in part, and remanded.

[¶18.]    GILBERTSON, Chief Justice, and SABERS, Justice, concur.

[¶19.]    ZINTER and MEIERHENRY, Justices, concur in part and dissent in part.

MEIERHENRY, Justice (concurring in part and dissenting in part).

[¶20.]    I would not remand this case. Based on the evidence presented, the circuit court did not err when it ruled in favor of the plaintiff for the entire claim. The majority opinion acknowledges that Schmidt's defense was laden with irrelevancies and a "perplexing array of contentions." *supra* ¶9.

[¶21.]    We should not endeavor to supplement the record or retry the case for the defendant on appeal. To do so is unfair to the plaintiff who had no chance to address the evidence or legal authority on which the majority opinion is based. Additionally, we should not fault the circuit court for failing to spot a valid defense from an incomplete and perplexing record; or from bizarre and illegitimate legal arguments. I would affirm on all issues.

ZINTER, Justice (concurring in part and dissenting in part).

[¶22.]     I join the writing of Justice Meierhenry because despite the circuit court's extraordinary offers to allow Schmidt to raise and argue any issues he desired to resist summary judgment, Schmidt failed to pursue the issue remanded by this Court. Under well-established law, Schmidt is precluded from pursuing an issue he never raised.

[¶23.]     At the summary judgment hearing, the circuit court went well beyond normal procedural practice to ensure that Schmidt was fully and fairly afforded his day in court. The circuit court painstakingly advised Schmidt of the nature of the proceeding, the procedural requirements of summary judgment, and the danger of not having an attorney. Thereafter, counsel for Citibank raised the fact that Schmidt disputed the credit card charges, but argued that Schmidt lost that right because, pursuant to the credit card agreement, the charges must have been made in his home state or within 100 miles of his current address. The circuit court then explained to Schmidt the consequences of failing to present affidavits raising an issue of fact about this dispute. The court even gave Schmidt an additional opportunity to present "whatever you want [to] me," whether in proper form or not, stating, "[t]ake your time and gather everything that you want me to consider [in resisting the motion] and give it to me." Following the submission of five such documents,[4] Schmidt's *sole* argument involved the matter of arbitration. Following

---

4.     The court described the documents as: a letter, a July 14, 2004 contract with
       Winston Rarities Ltd., and documents relating to the "arbitration." Although

(continued . . .)

the arbitration discussion, the court asked Schmidt, "[w]hat else did you want to tell me[?]" Schmidt responded: "Nothing, Your Honor. That's it." The court then gave each party ten additional days to submit further affidavits. The court indicated it was affording this extraordinary opportunity to make sure everyone had a "fair chance to see everything that I have in front of [me] and present anything else."

[¶24.]     Thereafter, Schmidt submitted an affidavit. Although that affidavit mentioned the home state/100 mile limitation, it did not identify authorities or make arguments suggesting that South Dakota was the home state or that the limitation had any application in this case. Instead, Schmidt only argued that such limitations do "not give fair protection to the credit cardholder, when cheated by a merchant." Nevertheless, the Court suggests that the burden of proof on the home state/100 mile limitation was on Citibank, and that Schmidt should have had the "benefit of any doubt" concerning the existence of any disputed fact on that issue. *Supra* ¶14. "[T]hose resisting summary judgment must [, however,] show that they will be able to place sufficient evidence in the record at trial to support findings on all the elements on which they have the burden of proof." Bordeaux v. Shannon County Schools, 2005 SD 117, ¶14, 707 NW2d 123, 127 (quoting Chem-Age Indus., Inc. v. Glover, 2002 SD 122, ¶18, 652 NW2d 756, 765 (citation omitted)); *see also* Celotex Corp. v. Catrett, 477 US 317, 322-23, 106 SCt 2548, 2552, 91 LEd2d 265, 273 (1986) (stating that entry of summary judgment is mandated against a party

_____

(. . . continued)
     they were not procedurally proper submissions in opposition to a motion for
     summary judgment, the court informed Schmidt that it would nonetheless
     consider them.

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial). And in this case, Schmidt had the burden of proof on this exception to liability because it was an affirmative defense. *See* SDCL 15-6-8(c) (providing that affirmative defenses include any "matter constituting an avoidance or affirmative defense"). Therefore, Citibank did not have the summary judgment burden on the home state limitation defense.

[¶25.] It is undisputed that Schmidt entered into a credit card agreement with Citibank and used the credit card to make purchases. Additionally, the Court concedes that when Citibank brought its motion for summary judgment, it submitted an affidavit and documentary evidence that Schmidt failed to make payment on those charges. *Supra* ¶13. Therefore, Citibank met its summary judgment burden. Schmidt, however, introduced no evidence creating an issue of fact on his affirmative defense. Consequently, summary judgment against Schmidt was mandated. *Celotex Corp.*, 477 US at 322-23, 106 SCt at 2552, 91 LEd2d at 273.

[¶26.] Although Schmidt was free to act as his own lawyer, "[h]e may not [now] capitalize on his unfamiliarity with law; he is bound by the same rules of evidence and procedure as is required by those who are duly licensed to practice law." Farmers Co-op. Elevator Co. of Revillo v. Johnson, 90 SD 36, 42, 237 NW2d 671, 674 (1976). Having chosen to act as his own lawyer, "he is bound to the consequences of his course of action." *Id*.