#25634-a-JKM

**2011 S.D. 29**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

ROGER RODRIGUEZ a/k/a
ROGER HICKEY,                                      Plaintiff and Appellant,

     v.

BROTHER MATTHEW MILES, JOHN
DONADIO and (The) CONGREGATION
OF THE PRIESTS OF THE SACRED
HEART, INC.,                                        Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF

THE FIRST JUDICIAL CIRCUIT

BRULE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE BRUCE V. ANDERSON
Judge

* * * *

ARGUED ON MARCH 21, 2011

OPINION FILED **06/22/11**

WILLIAM G. TAYLOR
JUSTIN G. SMITH of
Woods, Fuller, Shultz & Smith, P.C.
Sioux Falls, South Dakota

Attorneys for plaintiff
and appellant.


JAMES E. MCMAHON
ROCHELLE R. SWEETMAN of
Murphy, Goldammer & Prendergast, LLP
Sioux Falls, South Dakota

Attorneys for appellee
Miles.


ROBERT B. ANDERSON of
May, Adam, Gerdes and Thompson, LLP
Pierre, South Dakota

Attorneys for appellee
Donadio.


RICK W. ORR
TIMOTHY M. GEBHART of
Davenport, Evans, Hurwitz and Smith, LLP
Sioux Falls, South Dakota

and

STEVEN R. SMITH of
Andera & Smith Law Offices
Chamberlain, South Dakota

Attorneys for appellee
Congregation.

#25634

MEIERHENRY, Retired Justice

[¶1.]     The circuit court determined that the plaintiff's action for childhood sexual abuse was barred by the three year statute of limitations.  We affirm.

[¶2.]     The alleged sexual abuse against the plaintiff, Roger Rodriguez,[1] while he was a student at St. Joseph's Indian School in Chamberlain, South Dakota, occurred in the 1970's when Rodriguez was between seven and ten years old.  The defendants are Brother Matthew Miles and John Donadio (the alleged perpetrators) and the Congregation of the Priests of the Sacred Heart, Inc. (the entity that owned and operated St. Joseph's).

[¶3.]     The South Dakota Legislature permits a person who was sexually abused as a child to sue within three years of the abuse or three years from the time the person "*discovered or reasonably should have discovered that* [*his*] *injury or condition was caused by the act.*"  SDCL 26-10-25[2] (emphasis added).  The defendants asserted that this statute barred Rodriguez's claims because Rodriguez

_____

1.     Rodriguez is also known as Roger Hickey.

2.      At time of this lawsuit, SDCL 26-10-25 provided as follows:

> Any civil action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within three years of the act alleged to have caused the injury or condition, or three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by the act, whichever period expires later.

> The 2010 Legislature added the following language: "However, no person who has reached the age of forty years may recover damages from any person or entity other than the person who perpetrated the actual act of sexual abuse."

-1-

discovered or reasonably should have discovered that the childhood sexual abuse caused him injury more than three years before his lawsuit was filed. The defendants point out that Rodriguez admitted in a deposition that he knew he had been sexually abused and that, over the years, the memory of it made him angry and caused him to use alcohol and drugs and lash out at others. He also admitted that it had affected his work and family life and had caused him indescribable pain and anger. Based on his deposition testimony, the defendants moved for summary judgment.

[¶4.] In response, Rodriguez submitted an affidavit to clarify his deposition testimony. His affidavit indicated that he only became aware of the effects of the childhood sexual abuse after a psychologist, Dr. Frank Dame, explained them to him in 2005. Rodriguez recognized that he always had painful memories of the abuse and that he became "angry when [he] thought about being abused, . . . and lashed out, or drank or used drugs." He clarified, however, that when the defendants' lawyer asked him "if [he] knew at the time 'that this abuse was causing [Rodriguez] these problems,' it was those behaviors [(lashing out, drinking, and drug use)] [he] was referring to." Rodriguez claimed that he considered his behaviors normal and "an everyday part of life in Lower Brule [Indian Reservation]." He further claimed that he did not understand the link between the behaviors and the sexual abuse.

[¶5.] Dr. Dame's opinion, presented by affidavit, was that Rodriguez "was unable to and did not associate his anger, depression, resistance to authority, sexual dysfunction, drug and alcohol abuse, and violent behavior patterns with [the

childhood sexual abuse]." Dr. Dame indicated that Rodriguez recognized that he got angry and used drugs and alcohol as coping mechanisms when he thought about the childhood sexual abuse but that Rodriguez "did not connect the injuries and conditions he suffered from with the [sexual abuse]" until the summer of 2005.

[¶6.] Because this issue comes to us from an order granting summary judgment, we direct our review to "whether genuine issues of material fact exist and whether the law was correctly applied." *Zephier v. Catholic Diocese of Sioux Falls*, 2008 S.D. 56, ¶ 6, 752 N.W.2d 658, 662 (quoting *Bordeaux v. Shannon Cnty. Sch.*, 2005 S.D. 117, ¶ 11, 707 N.W.2d 123, 126). We view the evidence in the light most favorable to the non-moving party, Rodriguez. *Id.* (citing *Wulf v. Senst*, 2003 S.D. 105, ¶ 17, 669 N.W.2d 135, 141). "Entry of summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986)). "[T]hose resisting summary judgment must show that they will be able to place sufficient evidence in the record at trial to support findings on all the elements on which they have the burden of proof." *Id.* ¶ 6 n.3 (citing *Bordeaux*, 2005 S.D. 117, ¶ 14, 707 N.W.2d at 126 (quoting *Chem-Age Indus., Inc. v. Glover*, 2002 S.D. 122, ¶ 18, 652 N.W.2d 756, 765 (citation omitted))).

[¶7.] The statute of limitations in "SDCL 26-10-25 is an affirmative defense, and the burden of proof to establish affirmative defenses is on the party who seeks to rely on it." *Id.* ¶ 9 (citing *Clancy v. Callan*, 90 S.D. 115, 118, 238 N.W.2d 295, 297 (1976) (citing *Lang v. Burns*, 77 S.D. 626, 97 N.W.2d 863, 865 (1959))). "In

summary judgment proceedings, where the defendant asserts the statute of limitations as a bar to the action, and presumptively establishes the defense by showing the case was instituted beyond the statutory period, the burden [of production] then shifts to the plaintiff to establish the existence of material facts in avoidance of the statute of limitations[.]" *Id.* (quoting *Conway v. Conway,* 487 N.W.2d 21, 23 (S.D. 1992)). "Generally, a statute of limitations question is left for the jury; however, '[d]eciding what constitutes accrual of a cause of action' is a question of law and reviewed de novo." *One Star v. St. Francis Mission,* 2008 S.D. 55, ¶ 12, 752 N.W.2d 668, 675 (quoting *Peterson v. Hohm*, 2000 S.D. 27, ¶¶ 7-8, 607 N.W.2d 8, 10-11 (citations omitted)).

[¶8.]        It is undisputed that Rodriguez knew of the alleged abuse more than three years before he filed suit. It is also undisputed that he got angry and depressed, exhibited aggressive behavior, and used drugs and alcohol when he thought about the abuse. Dr. Dame labeled Rodriguez's reactions as coping mechanisms and concluded that Rodriguez had not connected the sexual abuse with his reactions, i.e. injuries, until 2005 during counseling.

[¶9.]        Dr. Dame's affidavit may support Rodriguez's claim that he did not have actual notice more than three years before filing his action. But Dr. Dame's affidavit leaves open whether Rodriguez had inquiry notice. An action "accrues and the plaintiff is put on inquiry notice when facts come to light that would prompt a reasonably prudent person to seek out information regarding his or her injury or condition and its cause." *One Star*, 2008 S.D. 55, ¶ 18, 752 N.W.2d at 677. This Court explained inquiry notice in *Zephier* as follows:

> [O]ne having actual notice of circumstances sufficient to put a prudent person on inquiry about a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself sufficient to start the running of the statute of limitations. Limitations periods will not abide indefinitely while those aggrieved discover all their damages. Statutes of limitations begin to run when plaintiffs first become aware of facts prompting a reasonably prudent person to seek information about the problem and its cause. Consequently, as we noted in *One Star,* SDCL 26-10-25 accrues when the plaintiff is put on inquiry notice of facts that would prompt a reasonably prudent person to seek out information regarding his or her injury or condition and its cause.

2008 S.D. 56, ¶ 14, 752 N.W.2d at 665 (citations and quotations omitted). Rodriguez commenced his action in November 2007. Even assuming that Rodriguez did not discover the connection between the sexual abuse and his injuries or condition until 2005, his action may still be barred if he was put on inquiry notice more than three years before he commenced his action. Therefore the question is whether Rodriguez became aware of facts that would have prompted "a reasonably prudent person to seek information about the problem and its cause" more than three years before commencing his action, or, stated otherwise, whether he had inquiry notice. *Id.*

[¶10.]     The facts material to inquiry notice are not in dispute. Rodriguez admitted in his deposition that, over the years, memories of the sexual abuse made him angry and caused other negative reactions. He answered as follows:

> Defense Lawyer:     In terms of your memories of these events, either of the sexual abuse from John Donadio or Brother Matt, did you think about that from time to time over the years?
>
> Rodriguez:     Oh, yeah.
> . . .

| | |
|---|---|
| Defense Lawyer: | When you would think about this abuse, it would make you very angry? |
| Rodriguez: | Oh, very angry. |

. . .

| | |
|---|---|
| Defense Lawyer: | You knew in your mind at the time that it was affecting you in that way? |
| Rodriguez: | Oh, yes, it did. |
| Defense Lawyer: | And there was never a time that you ever forgot about any of this, did you? |
| Rodriguez: | Nope. |

. . .

| | |
|---|---|
| Defense Lawyer: | You've had a number of problems with alcohol and drug abuse over the years? |
| Rodriguez: | Yes. |
| Defense Lawyer: | Do you attribute that to the sexual abuse? |
| Rodriguez: | Oh, yes. |
| Defense Lawyer: | So when you would think about the abuse, that would make you want to use alcohol and other drugs? |
| Rodriguez: | It was either lash out or crawl in a bottle. Lash[ing] out ended me in prison. Lashing out caused me to go to prison. |

. . .

| | |
|---|---|
| Defense Lawyer: | What other ways do you think the abuse has affected you? |
| Rodriguez: | It affected my work back then. It affected my family life. The way I raised my children. I mean, there's just so much— there's just so much that it— so much pain and anger that it caused. It's [in]describable. |
| Defense Lawyer: | You knew at the time that this abuse was causing you these problems? |
| Rodriguez: | Yep. |

-6-

Rodriguez also admitted that he disclosed to a prison official that he was sexually abused sometime before 2000. He explained:

> Every time you go to prison, they do a psychological evaluation on you. I had mentioned it one time that I'd been sexually abused. . . . [The counselor] had recommended that I come back and see him, but I never did. I never mentioned no names. I didn't mention no stories. I just told him that I had been sexually abused and that I had – I should start trying to deal with it.
> . . .
>
> I told 'em that I needed to deal with a sexual abuse that was with me. But I didn't tell 'em no details.

He later qualified his answer by affidavit as follows:

> At the time I went into the federal prison system, I had no understanding of the injuries and conditions I sustained as a result of the sexual abuse. I didn't understand how the abuse affected me until after I began discussing it with Dr. Dame in 2005. I recognized that the memories were painful for me, and it was the pain associated with those memories I was referring to when I said I "had to deal with it." I was prideful, tough, angry, violent, and a drug and alcohol abuser at the time, living on a reservation where those behaviors are the norm, not the exception. I never saw any reason to modify my behavior nor did I remotely link any of it to the sexual abuse. I thought my behavior was normal.

Rodriguez further acknowledged that he corresponded with Donadio around 1994 and asked "why he had done this to us." Around that time, Rodriguez contacted Donadio's ex-wife to warn her about Donadio's abuse since Donadio had "two little boys at the time."

[¶11.] Inquiry notice is determined by an objective standard. Rodriguez and Dr. Dame focus on what Rodriguez knew subjectively. Even though Rodriguez was *subjectively* unable to connect the full extent of his injuries or condition to the

sexual abuse, he was aware of enough facts to put him on inquiry notice. He knew he had been abused as a child. He knew when he thought about the abuse he got angry, he lashed out, and he used drugs and alcohol. He knew the memory of the abuse affected his behavior. He knew the memories were painful. He acknowledged to the prison counselor that he "should start trying to deal with it." These facts were sufficient to "prompt[] a reasonably prudent person to seek out information regarding his injury or condition and its cause." *Zephier*, 2008 S.D. 56 ¶ 14, 752 N.W.2d at 665. Because Rodriguez had inquiry notice more than three years before he filed suit, we affirm.

[¶12.] GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and HOFFMAN, Circuit Court Judge, concur.

[¶13.] HOFFMAN, Circuit Court Judge, sitting for KONENKAMP, Justice, disqualified.