#25729-a-JKK

**2011 S.D. 79**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

D.Z. IRON WING,                                    Plaintiff and Appellant,

    v.

CATHOLIC DIOCESE OF
SIOUX FALLS; BLUE CLOUD ABBEY;
FR. FRANCIS SUTMUELLER;
OBLATE SISTERS OF THE BLESSED
SACRAMENT; and SR. M. FRANCES,        Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE  SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE BRADLEY G. ZELL
Judge

* * * *

MICHAEL SHUBECK of
Law Offices of Gregory A. Yates
Rapid City, South Dakota

and

REBECCA L. RHOADES of
Manly & Stewart
Newport Beach, California                  Attorneys for plaintiff
                                                              and appellant.

* * * *

ARGUED OCTOBER 04, 2011

OPINION FILED **11/30/11**

MICHAEL J. FORD
DYAN J. EBERTS of
Quinlivan & Hughes, PA
St. Cloud, Minnesota

       Attorneys for defendants
       and appellees Oblate Sisters.


ROCHELLE SWEETMAN
MICHAEL L. LUCE of
Murphy, Goldammer & Prendergast, LLP
Sioux Falls, South Dakota

       Attorneys for defendant
       and appellee Catholic Diocese.


ROBERT STICH of
Stich, Angell, Kreidler & Dodge, PA
Minneapolis, Minnesota

and

ERIC C. SCHULTE of
Davenport, Evans, Hurwitz & Smith, LLP
Sioux Falls, South Dakota

       Attorneys for defendant and
       appellee Blue Cloud Abbey.

#25729

KONENKAMP, Justice

[¶1.] In October 2008, plaintiff brought suit for sexual abuse committed more than forty years earlier. He averred that the abuse was perpetrated by a nun and a priest at a boarding school he attended. Defendants moved for summary judgment asserting that the limitations period had expired on plaintiff's claims because he failed to commence his action "within three years of the act alleged to have caused the injury or condition, or three years of the time [he] discovered or reasonably should have discovered that the injury or condition was caused by the act, whichever period expires later." *See* SDCL 26-10-25. In granting summary judgment for defendants, the circuit court concluded that plaintiff never forgot the alleged abuse and was aware more than three years before commencing suit that his anger and hatred stemmed from this abuse. Plaintiff appeals.

### Background

[¶2.] D.Z. Iron Wing attended boarding school at St. Paul's Indian School in Marty, South Dakota from first to eleventh grade. More than forty years later, on October 8, 2008, Iron Wing brought suit against various defendants for sexual abuse committed by Sister Mary Frances Poitra when he was age ten and by Father Francis Sutmueller when plaintiff was in high school.[1] Sr. Poitra, who died before this suit was initiated, was a dorm matron in the little boys' dorm at St. Paul's. Iron Wing said that she would take him into her room at night when the rest of the children were sleeping and "would start fondling [his] genitals which lasted for

---

1. Iron Wing, and seven other plaintiffs, brought suit against the Catholic Diocese of Sioux Falls, Blue Cloud Abbey, Fr. Francis Sutmueller, Oblate Sisters of the Blessed Sacrament, and Sr. Mary Francis Poitra.

about 15 minutes[.]" These abuses were alleged to have occurred at least ten times over a three-year period.

[¶3.]        Fr. Francis, Iron Wing said, would call him to his room at 2:00 or 3:00 in the morning, and would tell Iron Wing to lie on the bed. Iron Wing then detailed how the abuse proceeded:

> He sat down beside me and he started to like rub my forehead. He told me I was going to go to sleep. He told me when I woke up I wasn't going to remember anything. But I didn't go to sleep. I just closed my eyes because I was too afraid to go to sleep. But once he thought I was asleep, then he took my shorts off of me. He started playing with my genitals. He was talking to me. While he thought I was asleep, he was talking to me. He, he was talking to me and saying things like don't be afraid because I know — I know you are going to like this. I'm not going to hurt you.

Iron Wing recounted that Fr. Francis progressed from fondling his genitals to "sucking on [his] penis." These abuses were repeated on eight or nine occasions.

[¶4.]        When Iron Wing was in his junior year of high school, he told his father and stepmother of the abuse. According to Iron Wing, his stepmother "walked up beside me and she slapped me alongside the head. She said how dare you talk about those people, those priests, those nuns, how dare you talk about them like that. She said those are people of God. They don't do those kinds of things. She said who are you to go and spread lies. She said you don't — don't be talking like that." After that, Iron Wing said he "never told anybody." But he left St. Paul's and attended high school in Flandreau, South Dakota.

[¶5.]        During his deposition, defendants asked Iron Wing about his memories of the abuse and what problems it caused him during his life. Iron Wing testified that he never forgot what Sr. Poitra and Fr. Francis did to him. He also explained

that "[t]he main problem it caused with that incident, with that person [Sr. Poitra], was a lot of hatred for the nuns and that whole order, not just her. A lot of hatred for the church. That's basically the main problem that it caused. I don't trust them." He said that Fr. Francis's abuse caused him to harbor hatred toward the church and priests. That hatred and anger developed during his junior year of high school.

[¶6.] Defendants moved for summary judgment on the ground that Iron Wing's claims against all defendants expired more than three years before October 8, 2008. For childhood sexual abuse allegations, "[a]ny civil action . . . shall be commenced within three years of the act alleged to have caused the injury or condition, or three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by the act, whichever period expires later." SDCL 26-10-25.

[¶7.] Iron Wing responded that despite his knowledge of the abuse and knowledge that he had anger toward the church, priests, and nuns, there was no evidence that he was aware of the causal connection between the alleged abuse and his injuries. He submitted an affidavit and report from Dr. Jeffery King, a specialist in cultural psychology. Dr. King opined that Iron Wing did not make the causal connection between his abuse and injury until early 2009, because his anger concealed the memories and emotions associated with the abuse. Anger and hatred, according to Dr. King, were coping mechanisms: "[w]hile these mechanisms are related to the sexual abuse, it must be understood that these are defenses to protect him from the emotional and psychological distress caused by the abuse. These

defenses allowed Iron Wing to distance himself from the direct and raw pain associated with the abuse." Dr. King diagnosed Iron Wing with moderate depression and post traumatic stress disorder.

[¶8.]     In its memorandum decision, the circuit court wrote that Iron Wing "always remembered the alleged sexual abuse." The court relied on Iron Wing's testimony that he told his father and stepmother about the abuse during his junior year of high school. The court further found that Iron Wing's hatred and anger toward the church, nuns, and priests was an "injury" for the purposes of SDCL 26-10-25. It concluded that a "reasonably prudent person in Iron Wing's position would have been prompted to seek out information regarding the injury, i.e. the hatred for the church and nuns and the cause of the injury." Because Iron Wing did not commence suit until October 8, 2008, the court ruled that Iron Wing's claim had expired under the statute of limitations and granted summary judgment dismissing suit against all defendants.

[¶9.]     Iron Wing appeals. He argues that hatred or anger do not constitute an "injury" under SDCL 26-10-25. He further contends that there is a genuine issue of material fact in dispute on whether a reasonably prudent person should have discovered the causal connection between the injury and the alleged abuse under Iron Wing's circumstances.[2]

---

2.     "In summary judgment proceedings, where the defendant asserts the statute of limitations as a bar to the action, and presumptively establishes the defense by showing the case was instituted beyond the statutory period, the burden then shifts to the plaintiff to establish the existence of material facts in avoidance of the statute of limitations[.]" *Conway v. Conway,* 487 N.W.2d 21, 23 (S.D. 1992) (citations omitted). "It is well settled that '"[s]ummary
(continued . . .)

**Analysis and Decision**

[¶10.]    Under SDCL 26-10-25, discovery of alleged abuse alone is insufficient to start the running of the statute of limitations. *Zephier v. Catholic Diocese of Sioux Falls*, 2008 S.D. 56, ¶ 10, 752 N.W.2d 658, 664; *One Star v. Sisters of St. Francis*, 2008 S.D. 55, ¶ 13, 752 N.W.2d 668, 675. There must also be evidence that the victim discovered or reasonably should have discovered the causal connection between the alleged abuse and the injury or condition. Iron Wing maintains that there is a genuine issue of material fact in dispute on whether a prudent person would be put on inquiry notice of the causal connection between the abuse and the injury under similar circumstances. He does not dispute that he has experienced anger and hatred toward the nuns, priests, and the church since at least his junior year of high school, but insists that Dr. King's affidavit opining that his anger and hatred were merely coping mechanisms, a means to escape and avoid negative feelings and painful memories, shows that there is sufficient evidence in dispute to preclude summary judgment.

_____

( . . . continued)

judgment is proper on statute of limitations issues only when application of the law is in question, and not when there are remaining issues of material fact."'" *Peterson v. Hohm,* 2000 S.D. 27, ¶ 7, 607 N.W.2d 8, 10-11 (quoting *Wissink v. Van De Stroet,* 1999 S.D. 92, ¶ 9, 598 N.W.2d 213, 215) (additional citation omitted). When issues of material fact remain, the statute of limitations question is for the jury. *Id.* ¶ 8. Nonetheless, although, "[g]enerally, a statute of limitations question is left for the jury," determining "'what constitutes accrual of a cause of action' is a question of law and reviewed de novo." *One Star v. Sisters of St. Francis*, 2008 S.D. 55, ¶ 12, 752 N.W.2d 668, 675 (quoting *Hohm*, 2000 S.D. 27, ¶¶ 7-8, 607 N.W.2d at 10-11 (citations omitted)).

[¶11.] Because Iron Wing's alleged sexual abuse occurred more than forty years ago, he had to have brought his civil action within "three years of the time [he] discovered or reasonably should have discovered that the injury or condition was caused by the act[.]" *See* SDCL 26-10-25. The evidence indisputably shows that Iron Wing never forgot the abuse and was aware that he was angry and felt hatred toward the church, the nuns, and the priests, as well as their orders since his junior year of high school. And despite the fact that his stepmother disbelieved him when he told her and his father of the abuse early in his junior year of high school, he nonetheless left the high school as a junior and went to the Flandreau Indian School. As he explained, the sexual abuse at the hands of Fr. Francis "was the main reason I left."

[¶12.] This case is controlled by our decisions in *One Star*, 2008 S.D. 55, 752 N.W.2d 668 and *Rodriguez v. Miles*, 2011 S.D. 29, 799 N.W.2d 722. As in *Rodriguez*, Iron Wing relies on expert opinion that his anger and hatred were mere coping mechanisms, and that he did not make the connection between his anger and hatred and the sexual abuse. Yet, as we wrote in *Rodriguez*, "even assuming that [he] did not discover the connection between the sexual abuse and his injuries or condition until 2005, his action may still be barred if he was put on inquiry notice more than three years before he commenced his action." 2011 S.D. 29, ¶ 9, 799 N.W.2d at 725-26. Thus the question here, as it was in *Rodriguez*, is "whether [Iron Wing] became aware of facts that would have prompted 'a reasonably prudent person to seek information about the problem and its cause' more than three years before commencing his action, or, stated otherwise, whether he had inquiry notice."

*Id.* When asked what problems the sexual abuse caused over the course of his life, Iron Wing responded: "The main problem it [referring to Sr. Poitra] caused . . . was a lot of hatred for the nuns and that whole order, not just her. A lot of hatred for the church. That's basically the main problem it caused. I don't trust them." He gave a similar answer with respect to Fr. Francis's abuse. And he explained that he began to experience this hatred in "[his] 11th grade year, 1965."

[¶13.]    An action "accrues and the plaintiff is put on inquiry notice when facts come to light that would prompt a reasonably prudent person to seek out information regarding his or her injury or condition and its cause." *One Star*, 2008 S.D. 55, ¶ 18, 752 N.W.2d at 677. "Inquiry notice is determined by an objective standard." *Rodriguez,* 2011 S.D. 29, ¶ 11, 799 N.W.2d at 726. Although Iron Wing perhaps subjectively could not "connect the full extent of his injuries to the sexual abuse, he was aware of enough facts to put him on inquiry notice." *See id.* He knew he had been abused by two members of a religious order beginning when he was age ten and resuming at age thirteen, because of this abuse he was angry and harbored hatred against the church and its priests and nuns from the time he was in the eleventh grade, he left the school because of the abuse, and he never forgot the abuse. These circumstances were sufficient to "'prompt[] a reasonably prudent person to seek out information regarding his injury or condition and its cause.'" *See Zephier*, 2008 S.D. 56, ¶ 14, 752 N.W.2d at 665 (citation omitted); SDCL 26-10-25. Consequently, Iron Wing was on inquiry notice more than three years before he brought suit in 2008.

[¶14.]    Affirmed.

#25729

[¶15.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.